WILLIAM C. BEIERMANN, Plaintiff, v. WALTER EDWARDS, Defendant (The People of the State of Illinois *ex rel.* Department of Agriculture, Intervenor-Appellant, v. Walter Edwards, Defendant-Appellee).

Second District   No. 2—89—0284

Opinion filed January 30, 1990.—Rehearing denied March 12, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Peter V. Bustamante, Richard W. Merrill, Jr., and Richard F. Linden, Assistant Attorneys General, of Chicago, of counsel), for appellant.

O'Reilly, Cunningham, Norton & Mancini, of Wheaton (Thomas R. Weiler, of counsel), for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, William Beiermann, filed a complaint, seeking damages for personal injuries and lost wages sustained following an accident between defendant Walter Edwards and defendant Anjum Khan. Plaintiff's employer, the State of Illinois (State), filed a complaint in intervention pursuant to section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)). Subsequently, Beiermann abandoned his personal injury action, allowing the State to substitute as plaintiff in intervention. One of the defendants, Khan, settled at trial. The jury rendered a verdict in favor of the remaining defendant, Walter Edwards, and the trial court entered judgment upon that verdict.

On appeal, the State argues that: (1) the trial court erred in refusing to bar the testimony of Debra Harrington, an occurrence witness, as a sanction for defense counsel's misconduct; (2) the trial court erred in not excluding the testimony of Dr. Roger Traycoff for defendant's failure to disclose this witness as an expert pursuant to Supreme Court Rule 220(b)(1); (3) the trial court erred in requiring the State, as an intervenor, to pursue, as its measure of damages, those damages which the original plaintiff, William Beiermann, would

have been able to collect from defendant; and (4) the trial court erred in determining that there was sufficient evidence to submit to the jury Illinois Pattern Jury Instructions, Civil, No. 3.01 (2d ed. 1971) (hereinafter IPI Civil 2d No. 3.01), dealing with impeachment by prior inconsistent conduct.

On October 5, 1983, William Beiermann, an inspector for the Department of Agriculture, had just finished inspecting and calibrating the gas pumps at a Citgo gas station located on Route 20 in Roselle when the cars driven by the defendants collided at the entrance to the station. At the time of the collision Beiermann was standing inside the gas station completing paper work. Following the collision, defendant Edwards' automobile struck the gas station building. According to Beiermann's testimony at trial, he was leaning against the wall of the building when Edwards' automobile struck it. Beiermann stated that he felt like he had been whacked in the back with a ball bat and that the impact knocked him face forward to the ground. Subsequently, he left the station building and began directing traffic away from the gas station. Beiermann did not complain to Debra Harrington, the station manager, or to the police or paramedics on the scene that he was hurt or injured.

Thereafter, Beiermann drove to his motel room in Joliet. It was Beiermann's testimony that the pain in his back became intense when he arrived at the motel. When he could no longer bear the pain, he went to the motel desk, asked for the name of the nearest doctor, and then proceeded to the doctor's office. According to Beiermann, the physician, Dr. Green, gave Beiermann some pain medication and recommended that Beiermann go to the hospital in Joliet. During Dr. Green's testimony, the doctor denied telling Beiermann that he should go to the hospital and further testified that after examining Beiermann, he concluded that Beiermann could return to work the next day.

Beiermann stated that the following morning he was stiff and sore in the lower back when he awoke and that the pain was spreading. Beiermann testified that he decided to return home to Springfield so he could go to the local hospital. Before returning to Springfield, he drove back to the Citgo station in Roselle to verify addresses and phone numbers gathered the preceding day. While at the station, Beiermann told manager Debra Harrington that he had hurt his back.

Prior to trial, Debra Harrington was disclosed as an occurrence witness by Beiermann and by defendant Edwards. Edwards produced to Beiermann a statement Harrington had given to the police describing the accident. One week before trial counsel for defendant Ed-

wards subpoenaed Harrington to appear for a discovery deposition. The date of the deposition, as set forth in the subpoena, was October 10, 1988. Defense counsel gave oral notice to counsel for the State that Harrington's deposition was scheduled for October 11. On October 10, Harrington appeared at defense counsel's Chicago office for her deposition.

At the hearing on the State's motion for sanctions against defendant Edwards and his counsel for improper notice of Harrington's deposition, counsel for the State related that on October 11 he received a telephone call from defense counsel's secretary informing him that Harrington's deposition had been canceled. The secretary stated that she did not know if the deposition would be rescheduled. Counsel for the State then telephoned Harrington to suggest that if she was going to talk to anyone, it would be fair to have all the parties present. Harrington informed counsel that she had already given her deposition on October 10 pursuant to a subpoena. Counsel for the State then prepared its motion for sanctions and had the motion delivered to the court and defense counsel.

At about 2:30 p.m. October 11, defense counsel phoned counsel for the State regarding some depositions to be taken later in the week. During the conversation, counsel for the State asked what happened with Harrington's deposition. Defense counsel replied that he had decided not to take it.

Shortly thereafter, defense counsel called counsel for the State to explain the mix-up in the scheduling of Harrington's deposition. It was defense counsel's explanation that his secretary had made a clerical mistake and subpoenaed Harrington for October 10 instead of October 11. Defense counsel first learned of the mistake when he received a telephone call on October 10 from his firm's Chicago office, indicating that Harrington was at that office for her deposition. According to counsel, he instructed his secretary to ask Harrington if she could return for her deposition the following date, October 11, but Harrington could not. Counsel then advised his secretary to try to contact counsel for the State while defense counsel proceeded to travel to the downtown office. When counsel arrived downtown, he learned that his secretary had been unable to reach counsel for the State due to the October 10 Columbus Day holiday.

Defense counsel explained to Harrington that he could not take her deposition since all the parties were not present. Counsel then asked if she would consent to giving him a "court-reported statement," and Harrington agreed. Defense counsel stated that Harrington's statement was substantially the same as the typewritten

statement Harrington had given to the Roselle police shortly after the accident.

At the conclusion of the hearing on the motion for sanctions, the court determined that an "honest mistake" had been made and that no "evil motive" was intended by defense counsel's actions. The court advised counsel that he should have sent Harrington home and then taken her statement at home if he wanted it. The court gave counsel for the State the option of barring defense counsel's use of the statement if the State so desired. The State did not object to this sanction. Subsequently, the State called Harrington as its own witness.

At trial, Harrington testified that at the time of the accident in question she was working inside the gas station and that Beiermann was standing approximately three feet from the wall which was struck by defendant Edwards' automobile. According to Harrington, Beiermann was still standing after the impact; he had not moved at all. Harrington stated that Beiermann did not appear to be physically injured after the accident and that he did not complain that his back hurt.

In November 1986, the State requested that Beiermann see Dr. Roger Traycoff, an expert in pain management. The State referred Beiermann to Dr. Traycoff for an evaluation of Beiermann's complaints of chronic pain. The evaluation was to aid the State in the management of Beiermann's worker's compensation claim.

On October 12, 1988, defense counsel took the evidence deposition of Dr. Traycoff. Dr. Traycoff testified as to a variety of tests he performed upon Beiermann. As a result of these tests, and a complete physical examination of Beiermann, Dr. Traycoff concluded that there was some factor responsible for Beiermann's pain other than an anatomical source and that there were enough inconsistencies in Beiermann's history and physical examination to suggest a psychological component for his pain.

During Dr. Traycoff's evidence deposition, the State moved that the doctor's deposition be stricken pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220) because Dr. Traycoff would qualify only as an expert witness, and defense counsel had failed to timely disclose this fact to the State. Dr. Traycoff's testimony was limited to his physical examination of Beiermann, his conclusions based on that examination, and his interpretation of tests which he performed on Beiermann.

Dr. Traycoff's testimony at his deposition revealed that he had had no contact with defendant or with defendant's attorney prior to giving his evidence deposition. Defendant only learned of Dr. Traycoff when records of Beiermann's treating physicians were subpoenaed.

Later, in a motion *in limine* the State moved to bar the defendant from calling any expert witness not previously disclosed (specifically, Dr. Traycoff). The trial court held that Dr. Traycoff was not a Rule 220 expert because he was hired by the State for the purpose of evaluating Beiermann's worker's compensation claim and not for the purpose of testifying.

During the jury instruction conference, defendant tendered IPI Civil 2d No. 3.01, dealing with impeachment by prior inconsistent statement or conduct. As given, the defendant's instruction was limited to prior conduct inconsistent with testimony at trial. The State objected to the instruction, arguing that no witness at trial acted in a manner inconsistent with his testimony at trial. The court stated that Beiermann was impeached because "[h]is conduct was inconsistent with what he said." The instruction was given to the jury.

The court fashioned its own damages instruction and submitted it to the jury. This instruction stated that the measure of damages was what the original plaintiff, Beiermann, could have recovered from defendant Edwards. The State objected, arguing that since the State was suing in its own name, the damages should be limited only to those sums the State would be properly entitled to recover, *i.e.*, sums the State actually expended or would be required to expend in the future.

The jury returned a verdict in favor of defendant Edwards, finding that William Beiermann did not sustain an injury as a proximate cause of defendant's conduct.

In its first contention the State argues that the trial court erred in refusing to bar the testimony of Debra Harrington, an occurrence witness, as a sanction for defense counsel's misconduct. The State maintains that defense counsel willfully abused the discovery process when he took Harrington's deposition without notice to the State and that the trial court's sanction of prohibiting the use of Harrington's statement at trial was not an appropriate sanction proportionate to the seriousness of counsel's misconduct. According to the State, defense counsel's misconduct constituted grounds for a default judgment.

■■ ■ The imposition of sanctions is a matter largely within the discretion of the trial court and will not be disturbed on review unless the sanction imposed constitutes an abuse of discretion. (*Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196.) In determining whether noncompliance with discovery orders or rules is unreasonable, the trial court should consider whether the offending party's conduct is characterized by a deliberate and pronounced disregard for the discov-

ery rules. (*Bautista v. Verson Allsteel Press Co.* (1987), 152 Ill. App. 3d 524, 532.) To determine whether a sanction order is just, this court must look to the conduct that gave rise to it and to the effect of that conduct on the parties. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1057.) A default judgment, being a drastic sanction, is one which courts are reluctant to impose and which should be imposed only as a last resort in those cases where the actions of a party show deliberate, contumacious, and unwarranted disregard of the trial court's authority. *Kubian,* 178 Ill. App. 3d at 196.

In its motion for sanctions, the State alleged that the deposition of Debra Harrington was taken without proper notice since the State had been notified that the deposition was to occur on October 11, 1988, when, in fact, it had been taken on October 10, 1988. At the hearing on the State's motion, the State argued that defense counsel had deliberately disregarded the rules governing depositions by failing to cancel Harrington's deposition once counsel learned the State could not be present on October 10 and by failing to inform the State that counsel had taken a "court-reported statement" on that date. The State asked the court to bar Harrington from testifying and to issue monetary sanctions.

In response, defense counsel explained that he had instructed his secretary to subpoena Harrington for October 11 but that his secretary had inadvertently inserted October 10 on the subpoena as the date for Harrington's deposition. According to counsel's explanation, he did not learn of the mistake in the date until his firm's Chicago office phoned him on October 10 to inform him that Harrington was at the Chicago office awaiting her deposition. Counsel then talked to his secretary, who informed him that she had mistakenly inserted the wrong date on the subpoena.

Counsel inquired whether Harrington could return on October 11 for her deposition. When Harrington stated she could not return, counsel tried to contact counsel for the State. His attempts were unsuccessful, but he instructed his secretary to continue trying to get ahold of the State while he proceeded to the Chicago office. Counsel for the State was never reached due to the Columbus Day holiday, a State holiday, on October 10.

When defense counsel arrived at the Chicago office, he informed Harrington that there had been a mistake in scheduling her deposition and that he could not take her deposition since all the parties involved in the case were not present. However, counsel asked Harrington if she would agree to give a "court-reported statement." Harrington agreed, and her statement was taken.

Defense counsel stated that on the following day, October 11, he instructed his secretary to contact counsel for the State, explain the mix-up, and tell him that Harrington's deposition would not be occurring that day. When defense counsel spoke with the State's counsel later in the day, defense counsel did not mention he had taken the witness' statement but did, subsequently, discuss it when he received the State's motion for sanctions.

Based on these facts, we agree with the trial court, which concluded, after hearing arguments of both counsel, that the "mix-up" in the date of the deposition was an "honest mistake" and that no "evil motive" was intended in notifying the State that Harrington's deposition was to occur on October 11 but in subpoenaing her instead for October 10. The court determined that because defense counsel had used a subpoena to get Harrington to his office, he should have sent her home and not taken any statement once he discovered counsel for the State could not be present. Counsel for the State was given a copy of the statement and told by the court that it had the option of determining whether to bar defense counsel's use of Harrington's statement at trial. Subsequently, the court ordered that defense counsel could not use the statement for impeachment purposes if Harrington was called to testify.

■ Although we look with a dim view at defense counsel's conduct, we believe the trial court did not abuse its discretion in determining that the appropriate sanction was to bar the use of Harrington's statement at trial. Defense counsel's conduct was not characterized by a deliberate disregard for the discovery rules, and counsel's conduct had little, or no, effect on the State. Although, due to the mix-up concerning the date of Harrington's deposition, no deposition was taken, Harrington had been disclosed on September 16, 1986, by Beiermann's attorney as a witness to the occurrence. Thus, the State could have interviewed Harrington at any time it chose. Consequently, a more severe sanction such as a default judgment or barring Harrington's testimony at trial, as suggested by the State, would have been unjustified under the circumstances presented here.

Moreover, as defendant points out, the State did not object to the sanction the trial court imposed. Where it is contended that a procedure of the trial court is in error, the failure to object to such procedure in the trial court precludes its review. (*In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 789.) Further, despite its request that Harrington be barred from testifying, the State called Harrington as its own witness. By doing so, the State waived its right to

assert that Harrington's testimony should have been barred.

■■ Next, the State contends that the trial court erred in not excluding the testimony of Dr. Roger Traycoff for defendant's failure to disclose the doctor as an expert witness pursuant to Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)). Defendant maintains that the trial court's decision was proper because Dr. Traycoff was not retained by defendant for purposes of rendering an opinion but, instead, was hired by the State on Beiermann's behalf to formulate a diagnosis, recommend therapy, and project the outcome of Beiermann's condition.

Supreme Court Rule 220(b)(1) provides in pertinent part:

"In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party ***." 107 Ill. 2d R. 220(b)(1).

The State admits that Dr. Traycoff was not retained by the defendant to render an opinion at the trial but, rather, was hired by a worker's compensation adjustor for the State. Nevertheless, the State argues that Dr. Traycoff could not be considered a treating physician and, therefore, outside the meaning of Rule 220(b)(1) (see *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35), because the doctor was hired strictly to render an opinion on Beiermann's worker's compensation claim. In light of this fact, the State posits, the doctor constituted an expert who should have been disclosed pursuant to Supreme Court Rule 220(b)(1) regardless of whether he was retained by the party calling him to testify. The State further contends that because the doctor's testimony that there was no anatomical basis for Beiermann's pain undoubtedly affected the outcome of the trial, the defendant should have disclosed the doctor's identity so that the State could have hired an expert to rebut Dr. Traycoff's testimony. We do not agree with the State's theory.

■■ Rule 220 governs only those expert witnesses whose relationship with the party arose solely because a party retained the physician to render an opinion at trial; the physician's relationship to the case, not the substance of his testimony, qualifies him as a Rule 220 expert. (*Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 1093.) In the instant case, Dr. Traycoff was retained by a liability claims adjustor for the State before the State's complaint in intervention was ever filed. Dr. Traycoff saw Beiermann on November 18, 1986; the State filed its complaint in intervention on October 30, 1987. Dr. Traycoff testified that he was hired by the State to formulate a diagnosis of Beiermann's condition, to recommend therapy, and to project the outcome

of Beiermann's condition. According to the doctor, Beiermann was asked to return in two weeks. Based on this testimony, it is evident that Dr. Traycoff was not hired to render an opinion at trial but to evaluate Beiermann's problem and to recommend possible treatment.

The fact that at trial Dr. Traycoff gave his opinion of Beiermann's condition as developed from the doctor's examination and diagnosis of Beiermann did not classify the doctor as an "expert." Although Dr. Traycoff did not apparently "treat" Beiermann's condition, his relationship with Beiermann was more in the nature of a treating physician than a physician hired to give an expert opinion at trial.

> "While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any litigation. Such an opinion is not formed in anticipation of a trial, but is simply the product of a physician's observations while treating the patient, which coincidentally may have value as evidence at a trial. In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35.

Here, Dr. Traycoff participated in an evaluation of Beiermann's condition, and that condition was the subject matter of the instant trial. At trial, Dr. Traycoff testified only as to matters within his personal knowledge, and no hypothetical questions were posed to the doctor by defense counsel. Dr. Traycoff was not under defendant's control but was called by defendant because the doctor had formed an opinion while treating Beiermann which the defense apparently believed had value as evidence at trial.

█ Under the circumstances presented in the instant case, we agree with the trial court, which found that Dr. Traycoff was not a Rule 220 expert. Dr. Traycoff was hired by the State for the purpose of an evaluation of a worker's compensation claim and not for the purpose of testifying at trial. In this context, he was either a treating physician or the State's expert. As either, defendant was not required to disclose Dr. Traycoff's identity as his identity was already known to the State, which had originally hired him and could, therefore, claim no surprise by his medical testimony.

The State next contends that the trial court erred in requiring the State, as intervenor, to pursue, as its measure of damages, those

damages which the original plaintiff, William Beiermann, would have been able to collect from defendant. It is the State's position that because the State, as Beiermann's employer, filed its complaint in intervention solely in its own name, it could only recover as damages those amounts it actually paid to or on behalf of Beiermann. This position, however, ignores the fact that although the State originally entered the instant suit as an intervenor, it was the State which later moved to have Beiermann dismissed as plaintiff and the State substituted in his stead.

■■ We find the cases cited by both parties to be of little help in reaching a determination concerning the instant issue. Rather, we think that any determination rests in the interpretation of section 5(b) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)). When interpreting a statute the court's function is to ascertain and give effect to the intent of the legislature. (*Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358, 361.) In determining legislative intent, the statute must be read as a whole, and all relevant parts considered. *Donnells v. Woodridge Police Pension Board* (1987), 159 Ill. App. 3d 735, 742.

■■ The pertinent parts of section 5(b) of the Act provide:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative ***.

* * *

In the event the employee or his personal representative fails to institute a proceeding against such third person at any time prior to 3 months before such action would be barred, the employer may in his own name or in the name of the employee, or his personal representative, commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee, and out of any

amount recovered the employer shall pay over to the injured employee or his personal representatives all sums collected from such other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this Act ***." Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).

According to these provisions, an employer required to pay compensation to an employee under the Act is entitled to reimbursement of amounts paid as compensation from any damages recovered by the employee in a proceeding brought by the employee against a culpable third party. If, however, an employee fails to proceed against such third person, the employer may in his own name or in that of the employee commence a proceeding against such third person for damages on account of injury to the employee. Out of any damages recovered the employer must pay to the employee any amount in excess of the compensation paid.

In the instant case, plaintiff Beiermann sought damages for personal injuries sustained following an accident involving the defendant. As a result of a worker's compensation claim filed by Beiermann against the State, the State was required to pay certain sums to Beiermann. In order to recover those sums, the State filed a complaint in intervention, seeking to recover such sums from any damages recovered by Beiermann from defendant.

■ However, despite the fact that Beiermann originally filed suit against defendant, Beiermann subsequently abandoned his cause of action, and the State then moved to be substituted as plaintiff in the case. That motion was granted, and the State, as plaintiff, then proceeded to trial against defendant. Although the State did not originally commence the suit against defendant, when the original plaintiff, Beiermann, elected not to proceed to trial against defendant and the State, in turn, elected to substitute as plaintiff in the instant action, the State became required, according to section 5(b) of the Act, to proceed against the culpable third person (the defendant) for the recovery of damages on account of injury to Beiermann.

Had Beiermann not abandoned his cause of action and prosecuted it against defendant, the State's participation in the suit would have been limited to protecting its lien for the amount of benefits paid to Beiermann against any judgment Beiermann recovered from defendant. However, the State's substitution as plaintiff in the instant action and its subsequent prosecution of the case to judgment created in the State "a right akin to the common law right of subrogation" (see *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 381), *i.e.*, a right to seek from defendant damages

for Beiermann's alleged injuries.

This is the same determination reached by the trial judge regarding the measure of damages required by the State in the instant situation. We agree with the trial judge's conclusions that he could see no difference, logically or statutorily, between an employer which originally proceeds against a third-party tort-feasor when an employee fails to take legal action against that third party and an employer which substitutes as plaintiff for an employee who originally files an action against the culpable third party but then subsequently elects to abandon that cause. In either case, the measure of damages would be those damages which the employee would have been able to collect from the defendant. Therefore, the trial court did not err in deciding that the State was required to seek as damages those damages to which Beiermann would have been entitled had he pursued the case in his own name.

Nonetheless, even if the court erred in reaching this determination, its decision would not constitute reversible error. A review of the record shows that a special interrogatory was submitted to the jury for its deliberation. The jury's response to that interrogatory shows that the jury did not believe Beiermann sustained his injuries as a proximate cause of defendant's conduct. Having reached its decision that defendant was not liable for Beiermann's injuries, the jury was not required to reach the issue of damages. Therefore, no justification for a reversal on the question of damages exists.

In its final contention the State argues that the trial court erred in determining that there was sufficient evidence to submit to the jury IPI Civil 2d No. 3.01, dealing with impeachment by prior inconsistent conduct.

IPI Civil 2d No. 3.01 states in relevant part:

> "The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness acted in a manner inconsistent with the testimony of the witness in this case on a matter material to the issues."

It is the State's position that the giving of this instruction was improper because there was no testimony by any witness and, in particular, by Beiermann that on any occasion the witness acted in a manner inconsistent with his testimony. We disagree.

IPI Civil 2d No. 3.01 is a cautionary instruction, and the decision to give or not give it is totally within the discretion of the trial judge. (*Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 464.) The giving of a particular jury instruction is justified if it is supported by some evidence in the record, and the trial court has the

discretion in deciding which issues are raised by the evidence. *Black v. Peoria Marine Construction Co.* (1987), 160 Ill. App. 3d 357, 364.

At trial William Beiermann testified as to the injury he received when defendant Edwards' automobile struck the station wall against which Beiermann was allegedly leaning. Beiermann stated that he felt like he had been whacked in the back with a ball bat and that the pain in his back became so unbearable when he returned to his motel room later that day that he went to see the nearest doctor. However, Beiermann's conduct was inconsistent with this testimony.

■■ Both Beiermann and station manager, Debra Harrington, testified that shortly after Edwards' automobile struck the station wall, Beiermann left the station and began directing traffic away from the gas station. When asked by Harrington if he was all right, Beiermann replied positively, never mentioning to Harrington that his back hurt. Nor did he tell the police or paramedics on the scene that he had been hurt or injured. The following day, despite the pain Beiermann testified he was experiencing and his decision to return home to a local hospital in Springfield, Beiermann drove in a completely opposite direction back to Roselle, to verify information gathered the preceding day and to tell Harrington that he was injured. Based on this conduct, the trial judge determined that Beiermann's testimony was sufficiently impeached so as to justify the giving of IPI Civil 2d No. 3.01.

Furthermore, IPI Civil 2d No. 3.01 did not instruct the jury specifically to compare Beiermann's conduct and testimony but rather advised the jury regarding what it might consider in determining the credibility of a witness. We conclude that the trial judge did not abuse his discretion in tendering this cautionary instruction, as there was sufficient evidence to warrant giving the instruction.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DUNN and INGLIS, JJ., concur.