CONCETTA CHIDICHIMO, Widow of Martin Chidichimo, Deceased, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (University of Chicago Press, Appellee).

First District (Industrial Commission Division)   No. 1—94—2570WC

Opinion filed March 8, 1996.

Barry A. Spevack and Steven J. Seidman, both of Monico, Pavich & Spevack, of Chicago, for appellant.

Kane, Doy & Harrington, Ltd., of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Concetta Chidichimo (claimant), widow of Martin Chidichimo (decedent), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1994)), alleging her husband sustained a fatal heart attack on March 18, 1983, which arose out of and in the course of his employment with University of Chicago Press (employer). The arbitrator denied benefits, finding there was no accidental injury that arose out of or in the course of employment. Claimant presented additional evidence on review to the Industrial Commission (Commission), consisting of claimant's third subpoena issued on February 8, 1984, which requested decedent's time tickets, and correspondence from employer's counsel dated February 21, 1984, which denied the request. The Commission affirmed and adopted the decision of the arbitrator; however, it failed to address additional evidence presented on review. On that basis, the circuit court remanded the case to the Commission. After considering the entire record and additional evidence presented on review, the Commission affirmed the decision of the arbitrator, finding that claimant failed to prove decedent sustained an accidental injury arising out of and in the course of his employment. The circuit court confirmed the Commission's decision. We affirm.

On March 18, 1983, decedent suffered a fatal heart attack while working as a linotype operator for employer. Claimant contends her husband's heart attack was caused as a result of his lifting and moving 25- to 35-pound print magazines that day. Employer denies the claim, arguing that decedent's department was slow that day; hence, there was nothing for him to lift or move. Furthermore, employer contends decedent suffered the heart attack during the lunch break.

On August 23 and December 20, 1983, claimant served subpoenas on employer seeking decedent's employment records. Employer responded to both subpoenas, noting the materials provided "are the only records in my/our possession or control relating to the [subpoena]." On February 8, 1984, claimant served another subpoena, which specifically asked for "employee daily time tickets." Employer objected to the subpoena on the basis that there is no Commission rule that provides for pretrial discovery.

In February 1988, the arbitration hearing began. Claimant called Gerald Davy, general manager of the printing department in 1983,

who testified that decedent's job normally required him to lift and carry 25- to 30-pound print magazines to his machine in order to change the type size. Davy stated that on the date of decedent's death, there was less work to be done because employer was phasing out decedent's department. Therefore, the majority of decedent's work as a linotype operator would likely have consisted of sitting at the machine punching keys. Davy did not know whether decedent actually carried and lifted magazines on the date he died; however, he testified that decedent's daily time ticket would indicate which jobs he performed. It was procedure for the employees to fill out their time tickets during the course of the day. Each day, the time tickets were sent to the accounting department, where the information was loaded into a computer. Employer would keep the records on a computer for two years and then destroy them. In accordance with this procedure, decedent's March 18, 1983, time records had been destroyed prior to the 1988 arbitration hearing.

Glenn Schwolow, foreman, acknowledged that decedent's ordinary duties consisted of lifting 30-pound magazines about five or six times per shift. He stated, however, that March 18, 1983, was a slow day because employer was phasing out the department; thus, decedent did not have to change a single magazine. Rather, on that date decedent worked on a sociology journal, which did not provide any occasion for changing the magazine. Schwolow also testified that during the lunch break (between 11:30 a.m. and 12 noon), decedent began complaining of terrific headaches. Shortly thereafter, decedent had trouble breathing. The paramedics were called to take decedent to the hospital, where he later died.

Claimant's medical expert, Dr. William Fitzsimmons, testified that decedent died from an acute cardiac incident brought on by physical or emotional stress. He stated, however, that if decedent did not lift or move heavy magazines on the day he died, then work was probably not the cause of decedent's heart attack.

Employer's expert, Dr. William Buckingham, opined based on a hypothetical question that decedent's death was not work related. He also stated that even if decedent had changed a 35-pound magazine that day, it would not have triggered the heart attack "[b]ecause the weight of the magazine would not be sufficient to induce any changes in the hemodynamics of his circulation that could in any way be considered as a factor."

As stated above, in accordance with routine procedure, employer destroyed decedent's time records of March 18, 1983, prior to the ¹tration hearing. Throughout the hearing, claimant asserted a ᶠor a presumption that the time sheets would show that

decedent worked with heavy magazines on the date he died. The arbitrator denied claimant's request, stating in the decision that claimant's attorney never subpoenaed the specific records.[1] The arbitrator also noted:

"The facts do not support a conclusion that [employer] intentionally destroyed or withheld documents. [Claimant] is not entitled to the presumption that the document would support her claim that the deceased employee lifted heavy objects on the day of his heart attack. Moreover, such a presumption, if it existed, is not evidence. The direct evidence of the work performed was the eyewitness testimony of the foreman, Glenn C. Schwallow [sic]. As soon as [employer] produced direct evidence of the work performed by the Deceased, the presumption vanished entirely. *Diederich v. Walters*, 65 Ill. 2d 95 (1976)."

On review, the Commission was presented with additional evidence, including claimant's February 8, 1984, subpoena, which requested decedent's daily time tickets, and employer's response dated February 21, 1984, which denied the request on the basis there is no pretrial discovery in workers' compensation cases. The Commission adopted and affirmed the arbitrator's decision denying benefits. With regard to the subpoena and claimant's request for a presumption in her favor, the Commission concluded:

"Section 7030.50 of the Commission Rules [(50 Ill. Adm. Code § 7030.50 (1994))] governs subpoena practice. Regarding use of subpoenas, it provides that:

Unless otherwise agreed by the parties, witnesses or documents may only be subpoenaed to appear or be produced at the time and place set for hearing of the cause.

\*\*\*

The Commission finds that the subpoena introduced on Review clearly violated § 7030.50 because on its face it did not request production of the documents at a time and place of hearing. [Employer] refused compliance based on this fact, noting that it was essentially a discovery request.

The Commission concludes [claimant] is not entitled to a favorable presumption and [employer] is not subject to sanctions based on destruction of documents. The first subpoena did not request machine production documents; the second subpoena was improper. [Claimant] did not seek enforcement of the second subpoena and further failed to take necessary steps to protect the existence of documents from routine deletion."

---

[1]Neither the subpoena dated February 8, 1984, which specifically requests the daily time tickets, nor the correspondence from employer's counsel dated February 21, 1984, was in evidence at arbitration.

On review, the circuit court noted the difference between workers' compensation cases and civil cases, which have imposed sanctions and/or injunctions where a party has notice that the other is seeking certain documents. The court also noted that in this case there was no evidence that employer acted outside the scope of routine procedure in destroying decedent's time records. Accordingly, the court denied claimant's request to impose a sanction or presumption in her favor based on employer's failure to produce or at least preserve decedent's time records for purposes of arbitration.

On appeal, claimant argues that the destruction of decedent's March 18, 1983, time records should give rise to a presumption in her favor that decedent had been lifting heavy magazines on that date. Before employer purged the records, claimant subpoenaed all employment records of decedent, including but not limited to daily time sheets. While claimant admits the rules of the Commission do not provide for pretrial discovery, she argues that because employer voluntarily responded to two out of three of the subpoenas, she had a right to believe that all relevant documents had been produced. She also asserts employer knew that whether decedent had been lifting magazines on the date he died was a crucial aspect of the case. As such, employer had an obligation to either tender or preserve the time sheets.

Claimant's argument is vitiated by the fact that employer specifically returned the third subpoena, stating "under the provisions of the Illinois Workers Compensation Act there is no provision for pretrial discovery and we will, therefore, not be complying with this purported subpoena." Employer in no way misled claimant into believing that the time tickets would be produced. Rather, employer made clear the fact it would not comply with the subpoena simply because it was not required to do so. In addition, upon receiving notice of employer's refusal to comply with the subpoena, claimant made no attempt to secure the records through the rules of the Commission by enforcing the subpoena. Had claimant believed the time records were crucial to her claim, she could have obtained a court order to obtain the records at the hearing or have had a subpoena issued pursuant to section 16 of the Act (820 ILCS 305/16 (West 1994)). Instead, claimant allowed four years to pass before she raised employer's noncompliance with the subpoena as an issue. By that time, the records had long been destroyed pursuant to routine procedure.

Claimant cites products liability cases that have applied sanctions where a party has destroyed the product at issue in the lawsuit. *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 473 N.E.2d 444 (1984);

*H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235, 632 N.E.2d 697 (1994). It has been held that sanctions may be imposed even in the absence of a court order barring destruction (*American Family Insurance Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 626, 585 N.E.2d 1115 (1992)), especially where a party knew or should have known the other party would want to inspect the evidence. *Shimanovsky v. General Motors Corp.*, 271 Ill. App. 3d 1, 8-9, 648 N.E.2d 91 (1994); *Graves v. Daley*, 172 Ill. App. 3d 35, 38-39, 526 N.E.2d 679 (1988).

The cases claimant cites arise in·a civil setting, rather than an Industrial Commission context. In civil cases, statutory discovery rules and the supreme court rules apply, including Rule 219 (134 Ill. 2d R. 219), which provides sanctions for discovery violations. However, workers' compensation cases are governed by the Act and do not allow for pretrial discovery. Further, assuming *arguendo* that employer knew decedent's time sheets or production records were of import in the case, the Commission found no evidence that the destruction of the records was anything other than routine procedure. The fact that employer did not destroy the records until more than one year after it received the third subpoena suggests there was no bad faith in the destruction. Had employer immediately purged the records upon receiving the subpoena (prior to the routine two-year period), it may have raised suspicion as to the contents thereof. However, in this case, claimant did not seek enforcement of the subpoena for over four years and failed to take necessary steps to protect the records from routine deletion.

Finally, claimant asserts she is entitled to a presumption in her favor in view of the fact that the failure to disclose documents can itself be evidence. She cites *LeMaster v. Chicago Rock Island & Pacific R.R. Co.*, 35 Ill. App. 3d 1001, 1010, 343 N.E.2d 65 (1976), for the proposition that the failure to produce important witnesses or documents indicates a consciousness that the fact or cause is bad or weak. While this may be true where there is a deliberate destruction of evidence or failure to comply with discovery rules, that is not the case here. Again, employer failed to comply with the subpoena simply because it was not required to do so. Further, the destruction of the requested documents occurred in a routine purging process more than a year after the subpoena was issued. Lastly, there was live testimony from foreman Glenn Schwolow to rebut any presumption that decedent lifted magazines on March 18, 1983. As noted by the arbitrator, once employer produced direct evidence of the work performed by decedent, which did not include lifting magazines, the presumption would vanish entirely. *Diederich v. Walters*, 65 Ill. 2d 95, 101, 357 N.E.2d 1128 (1976).

■ We recognize that this court, as well as other states, have used evidentiary presumptions in workers' compensation cases for the purpose of discouraging the wilful suppression or spoilation of evidence. See *Reo Movers, Inc. v. Industrial Comm'n*, 226 Ill. App. 3d 216, 589 N.E.2d 704 (1992); *Postural Therapeutics v. Worker's Compensation Appeals Board*, 179 Cal. App. 3d 551, 224 Cal. Rptr. 866 (1986); *Metropolitan Dade County v. Bermudez*, 648 So. 2d 197 (Fla. App. 1994); *Garrett v. Terminal R. Ass'n*, 259 S.W.2d 807 (Mo. 1953). We also note that a presumption is not evidence, but is a rule of law concerning evidence. *Diederich*, 65 Ill. 2d at 101. "It places on the adverse party the duty of going forward with the evidence.[2] However, a presumption ceases to operate as a factor and may be destroyed when it is met by positive and uncontroverted evidence." *Gaudreau v. Eclipse Pioneer Division of Bendix Air Corp.*, 137 N.J.L. 666, 669, 61 A.2d 227, 229 (1948).

■■ Accordingly, even in an Industrial Commission context, the intentional destruction of evidence should warrant the imposition of sanctions. However, less drastic measures are appropriate where relevant evidence is inadvertently lost or destroyed. *Metropolitan Dade County*, 648 So. 2d at 200. Although the Commission is not necessarily bound by rules of evidence, we find the policies of presumptions found in civil and criminal law to be helpful in analyzing presumptions in compensation cases. Such policies and considerations include any bad faith on the part of the offending party, the diligence of the party attempting to secure evidence prior to trial or hearing, the importance of the missing evidence, and the existence of independent testimony to rebut the presumption. *In re C.J.*, 166 Ill. 2d 264, 273, 652 N.E.2d 315 (1995); *Cohn v. Northern Trust Co.*, 250 Ill. App. 3d 222, 228, 621 N.E.2d 132 (1993); *Beiermann v. Edwards*, 193 Ill. App. 3d 968, 974, 550 N.E.2d 587 (1990); 134 Ill. 2d R. 237.

■ In the case *sub judice*, the Commission found no evidence of bad faith on the part of employer because the evidence was destroyed as routine procedure. The Commission further noted that the importance of the destroyed evidence was speculative at best. Employer produced independent evidence from Schwolow to rebut any presumption that decedent lifted magazines on the date he suffered a heart attack. Moreover, as employer pointed out at oral argument, because decedent suffered a heart attack at approximately 11:45 a.m., it is possible that he never even filled out a production record for that day. Accordingly, we find the Commission did not

---

[2]The burden of going forward with the production of evidence is not the same as a burden of proof.

abuse its discretion in denying claimant a favorable presumption against employer. See *Birdsley Trucking Co. v. Industrial Comm'n*, 192 Ill. App. 3d 39, 53, 548 N.E.2d 772 (1989) (evidentiary rulings are within the discretion of the Commission); *Beiermann*, 193 Ill. App. 3d at 974 (in civil cases, the imposition of sanctions for noncompliance with discovery is within the discretion of the circuit court and will not be disturbed absent an abuse of discretion).

Having determined the Commission did not err in denying claimant's presumption that the time records would have shown decedent lifted heavy magazines, the next issue is whether the denial of benefits is against the manifest weight of the evidence.

■ It is within the province of the Commission to determine whether a causal relationship exists between a work accident and an injury. *Williams v. Industrial Comm'n*, 216 Ill. App. 3d 536, 539, 576 N.E.2d 383 (1991). The Commission's determination will not be disturbed unless it is against the manifest weight of the evidence. *Dexheimer v. Industrial Comm'n*, 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034 (1990). The manifest weight of the evidence is "that which is the clearly evident, plain and undisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ The evidence presented to the Commission included the testimony of supervisor Schwolow, who stated that decedent did not have any occasion to change a magazine on the date he died. Rather, the department was being phased out, so there was little work for decedent to do except to work on a sociology journal at the linotype machine. Schwolow knew what decedent's assignment for that day was because he was the person who issued it. Manager Davy also testified that because employer was phasing out decedent's department, the majority of decedent's work would likely have consisted of sitting at the machine punching keys. In addition, the evidence shows that decedent suffered his heart attack during the lunch break.

Employer's medical expert, Dr. Buckingham, testified there was no causal relationship between the work and decedent's heart attack. He also stated that even if decedent had lifted heavy magazines that day, it would not have triggered the heart attack because the weight of the magazine was insufficient to induce any changes in the hemodynamics of his circulation. Claimant's expert, Dr. Fitzsimmons, opined that lifting magazines may have precipitated decedent's heart attack. However, he also stated that if decedent did not lift or move heavy magazines, then work was probably not the cause of his heart

attack. Even if the Commission had granted claimant a favorable presumption that decedent's time report would have shown he lifted magazines before suffering a heart attack, the evidence of Dr. Buckingham still supports the Commission's decision denying benefits. Based upon the foregoing evidence, we affirm the circuit court's decision finding the decision of the Commission is not contrary to the manifest weight of the evidence.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE and RARICK, JJ., concur.