WALTER E. OLDENBURG, d/b/a Walter E. Oldenburg Plastering Contractor, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. RALPH L. HAGEMANN, d/b/a Ralph's Lathing and Dry Wall, Defendant and Counterplaintiff-Appellant and Cross-Appellee.

Second District No. 2—89—1325

Opinion filed January 9, 1991.—Rehearing denied February 15, 1991.

Reese & Reese, of Rockford (Bernard P. Reese, Jr., of counsel), for appellant.

Downey, Yalden, Shriver & Yalden, and Joyce A. O'Neil, of Law Offices of Donald L. Shriver, both of Rockford (Donald L. Shriver, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Ralph Hagemann, doing business as Ralph's Lathing and Dry Wall (Hagemann), appeals from a judgment of the circuit court of Winnebago County awarding $23,306.54 to plaintiff, Walter Oldenburg, doing business as Walter Oldenburg Plastering Contractor (Oldenburg). On appeal, Hagemann contends that certain comments made and questions asked of witnesses by the trial judge were improper and that the trial judge erred by barring the testimony of an expert witness he wished to call. Oldenburg cross-appeals and argues that he was entitled to an award of prejudgment interest on the underlying judgment. We affirm.

Prior to the instant disputes, Oldenburg and Hagemann worked together as subcontractors for many years on a number of construction projects in northern Illinois and southern Wisconsin. The disputes in this case arose from two construction projects in which the parties were engaged as subcontractors. The first of these was for construction in a municipal building in Beloit, Wisconsin. The second was a project at Fort Atkinson High School.

Oldenburg alleged in count I of his second amended counterclaim that in May 1982 his bid for the Fort Atkinson High School project was accepted. Taking 12 subsequent change orders into account, the contract price was $192,184, of which Hagemann was to be paid $104,446. Hagemann failed to complete the work he agreed to perform. At the time Hagemann terminated work on the project, he had been paid $50,200. Oldenburg was forced to expend $67,431.51 in order to complete the work and, therefore, sought $13,185.51.

Oldenburg alleged in count II that his bid to perform certain construction work on the Beloit Municipal Building project was accepted in June 1982. Taking five subsequent change orders into account, the price was $199,193.89, including a credit of $19,614.93 for exterior studding supplied by the general contractor. Of this amount, Hagemann was to be paid $132,193.82. Hagemann was paid a total of $142,314.85 for this project by Oldenburg and was thereby overpaid in the amount of $10,121.03, which he refused to return to Oldenburg.

In counts III and IV, Oldenburg basically repeated the allegations of count II. Oldenburg stated in count III that the $10,121.03 overpayment should be restored to him in equity and good conscience. In count IV, Oldenburg alleged that Hagemann held the overpayment in trust.

Hagemann filed a four-count counterclaim against Oldenburg. Count I alleged that a total of $151,608.75 was due him on the Beloit Municipal Building project and that $9,293.90 of this sum remained to be paid. Count II alleged that Hagemann was still owed $1,199.50 for a project at Beloit College. The trial court directed a verdict in Hagemann's favor on this count, and it is not at issue here. Hagemann alleged in count III that he was not furnished with adequate specifications for the Fort Atkinson High School project, and he was owed a sum in excess of $15,000.

Count IV of the counterclaim was dismissed prior to trial, as was Hagemann's third-party complaint against architect Richard Johnson. These dismissals were affirmed by this court in an earlier appeal (*Oldenburg v. Hagemann* (1987), 159 Ill. App. 3d 631) and are not at issue here. While the third-party complaint was still pending, Johnson,

the third-party defendant, filed interrogatories requesting the name of any expert witness Hagemann intended to call at trial. Hagemann filed a response on March 12, 1986, in which he stated he would call David Jenkins, an architect, who would testify about bidding procedures and the responsibilities of contractors, subcontractors, and architects in connection with bids and the materials to be used on jobs.

At a pretrial conference on April 21, 1989, the trial judge asked the attorneys for Hagemann and Oldenburg whether they intended to call any expert witnesses to testify at trial. Hagemann's attorney responded, "No." At a subsequent pretrial hearing on May 12, 1989, Hagemann's attorney advised the court and opposing counsel that he intended to call David Jenkins as an expert witness and that his previous statement that he did not intend to call any experts was a mistake. Oldenburg's counsel filed a motion to bar Jenkins from testifying pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). The trial court granted the motion on the basis that Jenkins was not properly disclosed under the rule.

James Heidt testified that he was vice-president of Klobucar Construction Company, general contractor for the Beloit Municipal Building project. Heidt received a bid from Oldenburg of $220,000 on September 22, 1981, for light gage steel framing, lathing work, drywall work, acoustic ceiling tile, fireproofing, and insulation work. Oldenburg's bid became a part of Klobucar's bid proposal to the City of Beloit, which awarded the contract to Klobucar.

On March 8, 1982, Heidt had a meeting with Oldenburg and Hagemann to discuss the project. The three agreed to reduce the price for the project to $212,000. The $8,000 reduction occurred primarily because Oldenburg's bid included $27,500 as the cost of purchasing studs, but Klobucar had already purchased such studs from Bostwick Company for $19,614.93.

Heidt testified that Klobucar originally assigned the purchase order from Bostwick in the above amount to Oldenburg at the March meeting by agreement. Bostwick subsequently demanded payment from Klobucar, however, and Klobucar paid the sum that was due. Klobucar then credited the $19,614.93 payment against the amount due to Oldenburg. As a result of several other change orders, which are orders varying the contract price because of modifications in the work to be performed as the project progresses, the final amount due Oldenburg was $199,193.19.

Kenneth Kline testified that he was president of Corporate Construction, Limited, the contractor on the Fort Atkinson High School project, from 1975 until 1988. Kline's company received and accepted

a bid of $142,071 from Oldenburg and Hagemann to perform subcontracting work on the project. After several change orders were issued, the price was modified to $192,184. Work commenced in June 1982 on the project. Oldenburg did plastering while Hagemann did some lathing and installed acoustical ceiling tile.

According to Kline, Hagemann failed to show up at the project site one day in April 1983 and refused thereafter to work on the project. Oldenburg finished the work Hagemann had failed to complete. Kline testified that Hagemann demanded an extra $10,000, which he did not receive. Kline also testified that section 9500 of the project manual called for the installation of fire-rated ceiling tile.

Richard Johnson testified that he was a design architect for the Fort Atkinson High project. His office prepared the project manual and several addenda regarding the project. According to Johnson, section 9500 of the project manual stated that fire-rated ceiling tile would be necessary in some areas. Addendum one specified where such tile would have to be installed. Johnson only gave the manual and addenda to the prime contractors, not to Oldenburg or Hagemann.

Johnson testified further that some time before the work commenced, Hagemann went to his office with ceiling tile samples. Johnson approved two of the samples for use on the project; one was fire-rated, and one was not. In June 1983, after Hagemann had ceased work, Johnson inspected the ceiling and noticed a number of areas in which the tile that had been installed was not fire-rated but should have been according to the specifications and the local fire code. Oldenburg tore out the tile and replaced it. Approximately 30% to 40% of the tile installed by Hagemann had to be torn out and replaced.

Walter Oldenburg testified that he and Ralph Hagemann bid a number of construction projects together. Oldenburg would usually submit the bid if the project was in southern Wisconsin, and Hagemann would submit the bid if the project was in northern Illinois. Oldenburg submitted a bid on the Beloit Municipal Building project after Hagemann supplied a figure for the work he would perform. Oldenburg was to do plastering and fire-proofing on the project; Hagemann was to install interior and exterior studs, do drywall and lathing work, and perform other tasks.

Oldenburg's testimony concerning the amount of the original bid and the reasons for the subsequent $8,000 price reduction was consistent with James Heidt's testimony. Oldenburg also agreed with Heidt that the Bostwick purchase order was assigned at the March 8, 1982, meeting at which Oldenburg, Heidt, and Hagemann were

present. Several months later, Oldenburg received a change order from Klobucar deducting the $19,614.93 due Bostwick from the contract price. After several other change orders were issued, the final contract price was $199,193.89.

Originally, $152,582 was to be paid to Hagemann on the Beloit Municipal Building project, according to Oldenburg. Taking the Bostwick deduction and other change orders into account, however, the final amount due Hagemann was $132,193.82. Oldenburg paid Hagemann a total of $142,314.85, thus overpaying him $10,121.03. Oldenburg spoke to Hagemann about the overpayment. Hagemann said he had already spent the money but would see what he could do. Oldenburg also sent Hagemann a statement requesting Hagemann return the overpaid sum, but he never did so.

With regard to the Fort Atkinson High project, Oldenburg testified that he received a card from Corporate Construction inviting him to submit a bid. Oldenburg then picked up the specifications for the job, including the project manual and the addenda, and calculated his portion of the bid. He then gave Hagemann the manual, prints, and addenda so Hagemann could calculate his portion of the bid. Oldenburg subsequently received a bid from Hagemann and then submitted a bid of $124,071 to Corporate Construction, which he raised to $142,071 later in the day. Hagemann's portion of the bid included drywall work and installation of steel studs and acoustic ceiling tile.

According to Oldenburg, Hagemann contacted him in May 1982 to explain that he had not noticed he would have to tear out some ceiling tile at Fort Atkinson High School. Oldenburg told Hagemann that he had an additional $18,000 available if Hagemann needed it. Hagemann accepted the additional funds and commenced work on the project.

Hagemann walked off the job in the spring of 1983 and refused to return to work. Shortly thereafter, Hagemann and Oldenburg met with Kenneth Kline to attempt to resolve the situation. Hagemann never returned to work on the site, however. At that point, Hagemann had been paid $50,200. Had he completed the job, Hagemann would have received $104,446. Oldenburg was forced to pay $67,431.51 to complete the remainder of the work that was to have been done by Hagemann. This included the cost of hiring carpenters and the cost of removing and replacing some of the ceiling tile Hagemann had installed. After Hagemann left the job, an inspection revealed that he had installed ceiling tile that was not fire-rated in many areas where fire-rated tile should have been installed. Oldenburg sought $13,185.51 in damages for Hagemann's alleged breach of contract, the difference between the amount Oldenburg actually paid

for the work Hagemann was to perform and the $104,446 he would have paid if Hagemann had finished the work.

Ralph Hagemann testified that at his March 1982 meeting with Oldenburg and James Heidt of Klobucar, the Bostwick purchase order was not mentioned, nor was any $19,000 credit to Klobucar. According to Hagemann, Heidt told Oldenburg that if he reduced his bid to match that of the lowest bidder, he could have the job. Oldenburg then asked Hagemann to lower his bid by $7,100, and Hagemann did so, enabling Oldenburg to reduce the bid to Klobucar. After the meeting, Hagemann submitted a proposed contract to Oldenburg which stated "general contractor to supply exterior studding" and set forth a price of $145,582. Myrna Hagemann, who kept her husband's books, testified that Oldenburg paid Ralph $143,095.85 for the job and, taking into account several change orders, owed him an additional $9,560.89.

With regard to the Fort Atkinson High School project, Ralph Hagemann testified that he examined the project manual and the plans in preparing his portion of the bid, but he did not recall looking at any addenda. According to Hagemann, when he brought the ceiling tile samples to Richard Johnson's office, he brought two types of tile. Neither of them was fire-rated. Johnson approved a tile which had a fissure design.

Hagemann testified further that he pulled off the job in May 1983 because Oldenburg owed him a $35,000 draw. He had told Oldenburg he could not proceed further on the project without payment, but Oldenburg did not explain why payment was not forthcoming. Hagemann did not find out about the problem with the ceiling tile until after he had pulled off the job. According to Myrna Hagemann, Oldenburg owed Ralph $62,850.50 for his work on this project.

Myrna Hagemann also testified that Oldenburg owed her husband $1,199.50 for work on a project at Beloit College, as alleged in count II of his counterclaim. Ralph Hagemann received a directed verdict in that amount on count II of the counterclaim, and it is not at issue here. The jury found in Oldenburg's favor on the remaining counts of the counterclaim and on count I and II of his complaint and awarded him $23,306.54 in damages. The trial court denied Hagemann's motion for a new trial and Oldenburg's motion for prejudgment interest. Hagemann now appeals, and Oldenburg cross-appeals.

The first contention raised by Hagemann is that the trial judge improperly became involved in the questioning of witnesses and made remarks which exhibited hostility toward him and enhanced the credibility of Oldenburg's witnesses. Hagemann complains primarily about

the following exchange between the trial judge, Hagemann's attorney, and witness James Heidt during cross-examination:

"Q. My question was why didn't you deduct the $19,000 when you had your March meeting; instead of just taking $7,800 off, why didn't you take $26,000 off?

A. Because that purchase order had already been let to Bostwick from our firm and he assigned that.

THE COURT: He's trying to tell you. They don't want to take Oldenburg, Bostwick, they *** we want our money. That's why you didn't do it, right? They didn't want any money from Oldenburg, they wanted your money, didn't they, Bostwick?

A. Correct.

Q. Why didn't you take $26,000 off this?

A. They didn't know it at the time.

THE COURT: He told you three times.

MR. REESE [Hagemann's attorney]: I guess I'm dense, Judge.

THE COURT: I'm not trying to say you and I aren't on the same level, Mr. Reese, but I think I got it.

MR. REESE: I'm just dense. I still don't understand.

THE COURT: They wouldn't take Oldenburg. They wanted their money, is that right, Mr. Heidt?

A. Yes, sir.

THE COURT: So at the time they acquired this order he didn't have that from Bostwick, you didn't have their telling you we don't want any money from Oldenburg, you ain't going to assign it to anybody else, you're going to pay it?

A. That correct.

THE COURT: Now, the jury should disregard whatever I say and listen to the lawyers.

MR. REESE: Respectfully show an objection to Your Honor summarizing.

THE COURT: Objection sustained. Jury admonished to disregard any questions or remarks the court asked."

■■ ■ The trial judge, as the dominant figure in the courtroom, should exercise caution and avoid making statements which could prejudice the jury against or in favor of a party. (*Heiser v. Chastain* (1972), 6 Ill. App. 3d 552, 557.) Ordinarily, a trial judge should avoid extensive questioning of a witness (*Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 31), although if the questioning is done in a fair and impartial manner, the judge may inquire of a witness in order to elicit the truth or to clarify obscure issues. (*In re Custody of Horbatenko*

(1988), 176 Ill. App. 3d 970, 974.) Wide latitude should be accorded the trial judge in conducting a trial; a new trial will be granted on the basis of a judge's remarks or conduct only if the remarks or conduct result in prejudice to a party. *Vinke v. Artim Transportation System, Inc.* (1980), 87 Ill. App. 3d 400, 412; *Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 210.

In the case at bar, the above-quoted remarks and questions by the trial judge appear to have been motivated in part by a desire to clarify Heidt's testimony which, as we have seen, is proper. Additionally, here, as in *Vinke*, the trial judge felt the line of questioning was repetitive and sought to move counsel on to another line of questioning. The trial judge's comments in *Vinke* were held to be proper. *Vinke*, 87 Ill. App. 3d at 412.

Unlike *Vinke*, however, in the present case, the trial judge's conclusion that counsel's questioning was repetitive was not correct. Hagemann's attorney sought an explanation as to why Heidt, at the March 1982 meeting, sought an $8,000 credit on the Oldenburg-Hagemann contract and assignment of the $19,000 plus Bostwick purchase order instead of merely seeking a credit on the contract for the entire sum, approximately $27,000. The trial judge's statements that Bostwick wanted payment from Klobucar, not Oldenburg, but that Heidt did not know this at the time of the March 8 meeting, statements with which Heidt agreed, would explain why Klobucar paid Bostwick after assigning the purchase order and took the credit on the Oldenburg-Hagemann contract instead. The judge's statements do not explain, however, why Heidt did not merely seek such a credit in the first instance at the March 1982 meeting. Hagemann's attorney therefore should have been permitted to obtain such an explanation from Heidt.

■■ In our view, however, the trial judge's remarks and his failure to permit counsel to pursue this line of questioning did not prejudice Hagemann. Although Hagemann was foreclosed from receiving an explanation as to why Klobucar initially assigned the Bostwick purchase order instead of paying it and taking a credit on the Oldenburg-Hagemann contract, the advantage of this course is rather apparent. Taking the $27,000 credit would have required Klobucar to pay the $19,000 sum to Bostwick and wait for reimbursement in the form of credit on payment for the services of Oldenburg and Hagemann. By assigning the purchase order, Klobucar obviously intended to avoid making the $19,000 payment at all. Since this advantage was rather apparent, Hagemann suffered no prejudice by not being able to bring out this explanation. We also disagree with Hagemann's contentions

that the judge's remarks prejudiced him because of their disparaging nature and because they somehow enhanced Heidt's credibility. The fact that the trial judge admonished Hagemann's attorney for allegedly seeking to elicit repetitive testimony did not cause prejudice; the judge admonished the attorneys for both parties several times. Nor was Heidt's testimony enhanced because the trial judge briefly explained it and briefly questioned Heidt in order to clarify it.

■ Hagemann also complains that after Oldenburg's counsel objected to a certain question asked of James Heidt on cross-examination, the trial judge's vehemence in sustaining the objection caused him prejudice. No reference was made to this incident in Hagemann's post-trial motion, however, and he has therefore waived the issue on appeal. (See *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 350.) Hagemann also alleges that the trial judge acted improperly by asking Heidt certain questions relating to the purchase of studs from Bostwick and whether those studs were a part of the Oldenburg-Hagemann bid. Hagemann's post-trial motion made no specific reference to this questioning, however. The motion only contained a general statement that the trial judge "injected himself into the trial *** by interrogating witnesses." A post-trial motion must contain the specific grounds relied upon by the movant for relief or else the issues raised therein are waived on appeal. (See *Brown*, 83 Ill. 2d at 350-51.) Hagemann has therefore also waived the issue of the allegedly improper questioning of Heidt by the trial judge. Furthermore, our review of the record with regard to these two incidents reveals that Hagemann would not have suffered any prejudice from them.

■ Although Hagemann argues in his brief that the trial court made several erroneous evidentiary rulings, he only cites authority with regard to one of those rulings, the trial judge's conclusion that the parol evidence rule did not prohibit the admission of certain evidence. Failure to cite pertinent authority in support of an issue is a violation of Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) which results in waiver of the issue on appeal. (*In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 428.) Hagemann has therefore waived review of the evidentiary rulings he complains of, with the exception of the parol evidence issue.

After the March 1982 meeting between Hagemann and Oldenburg, Hagemann sent Oldenburg a document entitled "Proposal" for the Beloit Municipal Building project. This document listed the work Hagemann was to perform, including gypsum sheathing, metal lathing, and steel studs, interior and exterior. It then stated "General Contractors to supply exterior studding." Hagemann argues on ap-

peal that evidence he was to pay for the Bostwick studs violated the parol evidence rule because it was contrary to this contractual term.

■ The initial question for the applicability of the parol evidence rule is whether the writing was intended to be a final and complete expression of the parties' agreement. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63.) The trial court could reasonably have concluded that the "Proposal," which was not signed by Oldenburg, and which merely generally outlined the work to be performed by Hagemann, was not intended to be a final or complete agreement between the parties. Accordingly, it was not error to permit evidence that Hagemann was to pay for the Bostwick studs.

■ Hagemann's final contention is that the trial court erred in determining that his disclosure of David Jenkins as an expert witness was untimely under Supreme Court Rule 220(b) (107 Ill. 2d R. 220(b)), and by barring Jenkins from testifying as a sanction. The rule states in relevant part as follows:

> "[T]he identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of that expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (107 Ill. 2d R. 220(b).)

One of the objectives of Rule 220 is to ensure that the parties are "adequately advised regarding the critical opinions which may be offered in support of their opponent's claims or defenses." Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 438 (Smith-Hurd 1985).

According to Hagemann, there was no violation of Rule 220(b) because he named Jenkins as an expert witness in his March 1986 supplemental answers to interrogatories that had been filed by third-party defendant Richard Johnson. Johnson had requested, among other things, the names of expert witnesses Hagemann intended to call at trial. A copy of Hagemann's supplemental response was served upon Oldenburg's attorney in 1986.

■ Hagemann's supplemental response in 1986 would have only served to notify Oldenburg of Hagemann's intention to call Jenkins as an expert witness against Johnson in the third-party action. Hagemann's desire to call Johnson as an expert witness against Oldenburg in the initial action and counterclaim remained a surprise to Olden-

burg and his attorney until it was revealed at the second pretrial hearing, 10 days before trial. This is precisely the type of surprise last-minute disclosure that Rule 220 was designed to prevent. Thus, the supplemental response to interrogatories filed in 1986 was not adequate disclosure under Rule 220(b) of Hagemann's intent to call Jenkins as an expert witness to testify against Oldenburg.

 ██ Rule 220(b), as quoted above, requires disclosure of an expert's identity at the later of the following times: (1) within 90 days after the substance of the expert's opinion is first known to the party intending to call the witness or that party's counsel; or (2) at the first pretrial hearing. Hagemann's counsel obviously knew the substance of Jenkins' opinions in March 1986 when the supplemental response to Johnson's interrogatories was filed. Since Hagemann's attorney did not advise Oldenburg's attorney of his desire to have Jenkins testify against Oldenburg until May 1990, it is obvious Hagemann did not comply with the 90-day deadline. Hagemann therefore violated Rule 220(b) because he also failed to make the above disclosure at the initial pretrial hearing. Accordingly, under the rule, the trial judge had no alternative but to bar Jenkins from testifying. (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 223-24.) The imposition of this sanction and the trial court's determination that Hagemann violated Rule 220(b) were both proper.

 ██ We now turn to Oldenburg's cross-appeal. Oldenburg argues that the trial court erred by denying his motion for prejudgment interest under a statutory provision which states that prejudgment interest at the rate of 5% per annum shall be awarded "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing *** and on money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1989, ch. 17, par. 6402.) The decision of the trial judge on whether prejudgment interest should be awarded will not be reversed on appeal unless it is against the manifest weight of the evidence. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558.

Prejudgment interest will only be awarded for amounts due on an instrument of writing if the amount due was liquidated or subject to easy computation. (*Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 579.) An amount due under a contract is liquidated if the parties agree on the amount. (*E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 551.) The amounts sought by Oldenburg were clearly not liquidated, nor, in our view, were they easily computed. The $10,123.03 overpayment on the Beloit Municipal Building project can only be calculated by considering the

original Oldenburg-Hagemann bid, the subsequent reduction of that bid, numerous change orders and their effect upon Hagemann's portion of the bid, and the credit of approximately $19,000 resulting from the Bostwick studs. Calculating the amount due Oldenburg as a result of the breach of the Fort Atkinson High School project requires consideration of the amount originally due Hagemann, modifications of that amount due to change orders, the amount Hagemann had been paid when he left the job, and the expenses incurred by Oldenburg in having the work completed, including payments to other subcontractors. The fact that the final calculations of the amounts allegedly due Oldenburg were provided to the jury in Oldenburg's testimony does not mean these amounts were subject to easy computation. In light of the above considerations, the trial court could reasonably have concluded they were not subject to easy calculation.

▪▪▪ Additionally, Oldenburg argues that prejudgment interest should have been awarded because the amounts due him were "withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1989, ch. 17, par. 6402.) An honest dispute concerning the existence of a legal obligation does not constitute unreasonable or vexatious delay of payment, nor does defense of a lawsuit. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 557.) Considering the longstanding prior relationship between Oldenburg and Hagemann, and the complex and confusing circumstances which surrounded their dispute, the trial court could reasonably have determined that Hagemann's refusal to pay Oldenburg was not unreasonable or vexatious. The denial of interest was not against the manifest weight of the evidence.

Finally, Oldenburg contends that the trial court erred by refusing to enter judgment on counts III and IV, both of which he labels equitable counts. Counts III and IV, however, merely restate the allegations of count II that Hagemann was overpaid on the Beloit Municipal Building project. Count III does state additionally that the overpaid sum should be returned to Oldenburg, while count IV states additionally that the overpaid sum was held in trust by Hagemann for Oldenburg. We do not perceive any prejudice to Oldenburg from the fact that judgment was entered in his favor on only one of these three redundant counts.

Oldenburg argues that count IV alleges the existence of a constructive trust and states that any increase in the trust *res* due to interest would belong to him. (See *People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 513.) Oldenburg then acknowledges that he presented no evidence that Hagemann earned

any interest on the overpaid funds but states, under these circumstances, he should receive the 5% statutory prejudgment interest amount from the date he first demanded payment. This argument is waived under Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) for failure to cite supporting authority, and it is without merit, as we have already determined Oldenburg is not entitled to prejudgment interest under the relevant statute (see Ill. Rev. Stat. 1989, ch. 17, par. 6402).

For the above reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.