DEWEY WIMBERLEY, Plaintiff-Appellee, *v.* MATERIAL SERVICE CORPORATION, Defendant-Appellant.

(No. 57737; )

First District (2nd Division)—June 19, 1973.

*Rehearing denied July 17, 1973.*

Lord, Bissell & Brook, of Chicago, (Richard E. Mueller, Richard C. Conklin, Cornelius P. Callahan, and George M. Elworth, of counsel,) for appellant.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago, (Nat P. Ozmon and Timothy M. O'Brien, of counsel,) for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff filed a complaint alleging negligence on the part of defendant. A jury trial was conducted. At the close of all the evidence the court allowed plaintiff to file an amended complaint adding a Count based on the doctrine of *res ipsa loquitur*. The trial court then granted plaintiff's motion for a directed verdict on the issue of liability. The question of damages was submitted to the jury and they awarded plaintiff the sum of $60,000.00. On appeal defendant contends:

(1) It was improper to direct a verdict for plaintiff on the issue of liability because the evidence presented a question of fact for the jury to decide and plaintiff was not free from contributory negligence as a matter of law;

(2) The trial court erred by excluding evidence of a subsequent injury suffered by plaintiff; and

(3) Plaintiff's closing argument was improper and resulted in prejudicial error.

On June 21, 1965, at approximately 5:30 P.M. a concrete mixer truck owned by defendant and operated by its employee was proceeding in a northeasterly direction on the Stevenson Expressway at an approximate speed of 50 miles per hour. Plaintiff was operating his motorcycle behind the truck at a constant distance of approximately 100 to 150 feet. Both vehicles were in the curbside lane of traffic. An automobile was travelling alongside plaintiff in the next lane to his left at a speed of about 50 miles per hour. There were a total of three lanes carrying traffic in a

northeasterly direction. The weather conditions were good, the road surface was dry, and traffic was light. Plaintiff observed an object "bouncing, spinning" in front of him. He applied his brakes and directed his motorcycle slightly to the left. The object struck plaintiff's motorcycle and right foot. The object was subsequently identified as a metal cement chute, three to four feet in length, which is normally stowed on the right rear fender of defendant's truck. Plaintiff retained control of his motorcycle and brought it to a stop. After a cursory examination of his cycle, which revealed that it was operable, plaintiff pursued the truck and subsequently communicated the details of the mishap to the truck driver. At the driver's suggestion, plaintiff followed the truck and driver to defendant's office. Plaintiff was transported from the office to a medical center where he received treatment for his injuries.

The truck driver testified that he was unaware that anything had fallen from the truck until he was so informed by an unidentified motorist on the expressway. After receipt of this information he inspected the truck and discovered that the cement chute and stowage receptacle therefor were missing. The receptacle was normally mounted on to the right rear fender of the truck by two bolts which were also missing. The driver further testified that he had inspected the truck in the morning and again before commencing the return trip from a construction site to defendant's yard. The chute receptacle was tested for security by wiggling it. The receptacle was securely mounted when tested by the driver. The mounting bolts which secured the receptacle to the truck were not inspected because they were covered with mud and were not easily observable.

Medical testimony at trial revealed that plaintiff had suffered a compound fracture of the distal phalanx of the right great toe, soft tissue swelling in the right hip area, and a ruptured intervertebral disc in the lumbar area. Surgery had been recommended for correction of the ruptured disc, but plaintiff declined undergoing the operation because of his fear of the procedures involved.

Defendant initially contends that it was error to direct a verdict for plaintiff on the issue of liability because the evidence presented a question of fact for the jury to decide and plaintiff was not free from contributory negligence as a matter of law.

■■ To establish a *prima facie res ipsa loquitur* case a plaintiff must establish that the instrumentality which caused the injury complained of was within the control or management of defendant, that the result would not have occurred in the ordinary course of things without negligence on the part of defendant and that plaintiff is free from contributory negligence. (*Drewick v. Interstate Terminals, Inc.*, 42 Ill.2d 345;

*Metz v. Central Ill. Electric & Gas Co.,* 32 Ill.2d 446; *Jirik v. General Mills, Inc.,* 112 Ill.App.2d 111.) Application of the doctrine raises an inference of negligence, the strength of which is dependent upon the facts and circumstances of the case, which must be weighed with all other evidence in the case. (*Drewick, supra; Metz, supra; Collgood, Inc. v. Sands Drug Co.,* 5 Ill.App.3d 910.) The inference of negligence may be so strong as to require a directed verdict for plaintiff. *Collgood, Inc., supra;* see also *Moore v. Atchison, Topeka & S.F.R. Co.,* 28 Ill.App.2d 340; *Erckman v. Northern Illinois Gas Co.,* 61 Ill.App.2d 137.) A verdict ought to be directed when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494.

 It is undisputed that the injury-causing instrumentality in the case at bar was within the control of defendant and the result was such as would not ordinarily occur in the absence of negligence on the part of defendant. Defendant presented no evidence which would suggest that the result could have occurred without negligence on its part. The testimony of the truck driver tending to show due care on the part of defendant does not negate the inference of negligence raised by the evidence, but must be considered along with all other evidence in the case. All of the evidence in the instant case, when viewed in its aspect most favorable to defendant, so overwhelmingly favors plaintiff that no contrary verdict based thereon could ever stand. Therefore, if plaintiff was free from contributory negligence his motion for a directed verdict on the issue of liability was properly granted.

 The sole evidence regarding plaintiff's conduct was presented through his own testimony, which was unimpeached and uncontradicted as it related to the occurrence. Contrary to the insistence of defendant, we do not think that it can reasonably be inferred from the evidence that plaintiff: (1) was following the truck too closely; (2) was travelling at an excessive rate of speed; (3) failed to keep a proper lookout; (4) had ample time to avoid hitting the chute; or, (5) did not attempt to avoid colliding with the chute. The evidence established that plaintiff was not guilty of contributory negligence. Therefore, the trial court correctly granted plaintiff's motion for a directed verdict on the issue of liability.

Defendant next contends that the trial court erred by excluding evidence of an injury suffered by plaintiff subsequent to the occurrence in question. The basis of this contention is that the trial court would not allow defendant to cross-examine plaintiff's witnesses concerning an injury incurred by plaintiff on January 2, 1968. The trial court stated

that its decision was based upon *Gordon v. Checker Taxi Co.*, 334 Ill. App. 313, wherein it was announced that it is improper to raise innuendoes on cross-examination of a witness, under the guise of laying a foundation for impeachment, if there will be no proof of the matter insinuated. Thus, the trial court indicated that, unless defendant could show that the subsequent injury was in some way related to the injuries for which plaintiff was seeking to recover, evidence of the subsequent injury would not be admitted.

In an apparent attempt to relate the subsequent injury to the injuries for which recovery was sought, defendant produced the doctor who had treated the subsequent injury. The court conducted a hearing outside the presence of the jury to determine whether or not the doctor's testimony would be admissible. After examination of the doctor by court and counsel, the trial court ruled that the doctor would not be permitted to testify as to the January 2, 1968, injury. Defendant's motion to treat the testimony at the hearing as an offer of proof was allowed.

The doctor's testimony was that he examined plaintiff on January 3, 1968, in connection with plaintiff's complaint of lower back pain. Plaintiff first noticed the pain on January 2, 1968, following a rapid motion associated with raising his left leg. The doctor diagnosed the condition as an acute lumbo sacral sprain. He testified that acute signified "shortness of duration of the manifestations" as opposed to chronic which means over a long period of time. He prescribed "a few days bed rest and the use of local heat" for treatment of the problem. He had not seen plaintiff since the time of that diagnosis.

On cross-examination by plaintiff's counsel, the doctor testified that he had no knowledge of injuries sustained by plaintiff other than the one which he had diagnosed. He also testified that he could not relate the problem that he diagnosed to the 1965 occurrence or any condition that plaintiff might have had with his right leg at the time of trial.

■■ Evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Marut v. Costello*, 53 Ill.App.2d 340, aff'd 34 Ill.2d 125.) Defendant sought to introduce evidence of the subsequent injury to prove that all of the injuries alleged by plaintiff at the time of trial were not the result of the 1965 occurrence. However, defendant was unable to show that the subsequent injury was related to the injuries for which plaintiff sought to recover. The offer of proof merely indicated that plaintiff had suffered a relatively minor back injury of short duration. It could not be reasonably inferred from the doctor's testimony that the 1968 injury was related to the injuries for which plaintiff sought to recover. Therefore, the offer of proof was irrelevant and it was proper for the trial court to exclude evidence of the

subsequent injury to prevent the jury from speculating that the injury was in some way related to the injuries for which recovery was sought.

Defendant's final contention is that plaintiff's closing argument was improper and resulted in prejudicial error. We are initially referred to the following statement made by plaintiff's counsel at the outset of his rebuttal of defendant's closing argument:

> "Mr. Tourek says that the claim of Mr. Wimberley is grossly exaggerated. Well now, it is [sic] grossly exaggerated. As I can only find that is his opinion. I ask Mr. Tourek for Material Service Corporation then why didn't they bring in some evidence to show that it was grossly exaggerated? Then why didn't some doctor get on the stand on behalf of Material Service and testify that this is not the situation? Then why didn't they bring in some evidence, any evidence at all instead of just standing before you at this stage and say it's grossly exaggerated?"

■■ Defendant urges that this argument was improper and prejudicial because it had sought to introduce evidence of the exaggeration of the extent of plaintiff's injuries through the testimony of the doctor who had treated plaintiff for the 1968 injury, but such testimony was excluded by the ruling of the trial court. We disagree. The offer of proof consisting of the testimony of defendant's medical witness did not tend to show that plaintiff's allegations of the seriousness of his injuries were exaggerated, but merely tended to show that plaintiff had suffered an injury subsequent to the injury complained of in the case at bar. It was not improper for plaintiff's counsel to comment on the lack of evidence in support of defendant's contention that plaintiff's injuries were exaggerated.

Defendant next refers us to the following argument advanced by plaintiff's counsel during his rebuttal argument:

> "He says, 'Why doesn't he have the operation?' I talked to you quite a bit about that. He says, 'Seventy-five percent get good or excellent results.' I accept his terminology. That sounds good when you say 75 percent. If I know what 75 percent is, that means if you four folks had to have that surgery one of you would be in bad trouble, and if you four folks had that surgery one of you would be in bad trouble, if you four folks had that surgery one of you would be in bad trouble. To me those are big odds. If everybody who had pneumonia, one out of four died, this population would be—
>
> MR. TOUREK: I object, Judge.
>
> THE COURT: Overruled. You opened the door.
>
> MR. OZMON: This population would be way, way down.

Those are big mortality odds, and although 75 percent sounds nice when you say it, 75 percent, if you put four human beings out there and say one of you are not going to come off that table in very good shape and you three may come off with a good result, and maybe one of you might come out with an excellent result, now I don't know about Counsel, but those statistics scare me and I don't blame Mr. Wimberley for being scared."

Defendant urges that the above argument was designated to arouse the prejudice of the jury and appeal to its passions by inferring that plaintiff might die if he underwent the proposed corrective surgery. Defendant asserts that there was no evidence presented from which the jury could infer that the surgery could prove fatal.

■■ Plaintiff's argument did not state that there was a possibility of death from the surgery. Rather, it was a response to an argument advanced by defendant that there was a 75 percent probability of correcting plaintiff's back disorder through corrective surgery. Plaintiff's counsel contended by means of analogy that plaintiff could come within the 25 percent of cases where surgery did not produce the desired result. It is our opinion that the argument was not improper. See *Perfect v. Kaley*, 130 Ill.App.2d 61.

The judgment is, therefore, affirmed.

Affirmed.

LEIGHTON and HAYES, JJ., concur.