MARTHA MOORE, Plaintiff-Appellee, v. GREG ROBERTS *et al.*, Defendants (Greenup Cumberland County Fair Association, Defendant-Appellant).

Fourth District    No. 4—91—0128

Opinion filed August 16, 1991.

Randolph M. Rich, of Marshall, for appellant.

Dale A. Cini, of Ryan, Cini, Bennett & Radloff, of Mattoon, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Martha Moore brought an action against various defendants for personal injuries she sustained at the Cumberland County Fair in 1985 when she was trampled by a horse which had broken through a draw gate and left the racetrack during a race. Default judgment was entered against defendants Holsapple, Thomas and Hutchison. Prior to trial, two other defendants, a jockey, Lindel Ray Wells, and a horse owner, Greg Roberts, reached a settlement with Moore. Thereafter, the trial proceeded with the one remaining defendant, the Cumberland County Fair Association (Association). Roberts and Wells testified at trial for Moore regarding the safety of the location of the draw gate. The jury returned a verdict in favor of Moore. The Association appeals, contending (1) the trial court erred in allowing these two witnesses to testify as experts since neither was previously disclosed as such pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220) and (2) the trial court erred in allowing Moore to amend count III, paragraph 5(a) of her complaint. We affirm.

Wells testified he has been a licensed thoroughbred racehorse jockey for 10 years and has raced in various parks including Fairmont Park in Collinsville, Illinois, Churchhill Downs in Kentucky, and Arlington Park in Arlington Heights, Illinois. He testified he has been around horses all of his life but has worked with them as an occupation since the age of 12. He testified he began racing horses at the age of 17 and he also has been a horse groom.

Wells testified he was hired by Roberts to ride a horse at the Cumberland County fair on August 22, 1985. Wells stated that as he made the final turn on the racetrack, the horse "[n]ever attempted to make the turn and went through the outside, hit the outside fence where the gate is." Wells explained the horse headed for the draw gate, which leads to the barn area. He was knocked off his horse when the jockey on the horse to his right, who also had broken through the gate, bailed off his horse. Wells fell off his horse to the left, and watched his horse go to the left of the lemonade stand while

the other horse went to the right of the lemonade stand. Finally, over objection by the Association, Wells testified, in his opinion, the draw gate was in an unsafe location because the horses see the gate when they make the final turn, know that is where they entered the racetrack and have a natural instinct to go back out where they came on the racetrack.

Roberts testified he has been involved with horses since he was a small child and he began raising horses as an occupation when he was 18 or 19 years old. He has raced horses all over the country and has visited many racetracks. He also has worked and trained horses for approximately 19 years and previously raced horses at the Cumberland County fairgrounds.

Roberts testified he was the owner of a horse named Arkie Rullah, which was entered into a race on August 22, 1985, at the Cumberland County Fair. Arkie Rullah was stabled at the fairgrounds in the stables which are located to the north and east of the oval racetrack. Roberts explained that the horses are led to the racetrack from the stables on a gravel road which ends at the draw gate located on the fourth turn of the racetrack. The draw gate is made of two pipes that are latched together in the center by a pin and U-shaped piece of metal. Roberts testified, over objection by the Association, based on his experiences as a thoroughbred horse owner and trainer and his knowledge of other racetracks, that the draw gate was in an unsafe location. Roberts opined the gate was in an unsafe location because it was on the corner near where the horses were stabled and the horses could see the stables and choose to go there instead of making the final turn.

On the fifth day of trial, after both sides had rested, Moore made an oral motion to file an amended count III to her complaint. This motion was to allow the pleadings to conform to the proofs. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c).) The Association's attorney objected to paragraph (d) of the amended count, which alleged the Association negligently and carelessly failed to post warning signs. After hearing argument, the trial court struck that paragraph from the pleading. At no time did the Association's attorney object to paragraph (a) of the amended count III, which alleged the Association negligently and carelessly placed the draw gate in an unsafe location.

The jury returned a verdict in favor of Moore in the amount of $63,316.08. The Association filed a post-trial motion alleging, among other things, that the trial court erred in allowing Roberts and Wells to testify regarding the safety of the location of the draw gate. The Association also contended the trial court erred in allowing Moore to

file the amended count III to her complaint. During the course of the argument, defense counsel stated he did not believe Roberts and Wells were retained as experts to testify for Moore. Moreover, upon inquiry from the court, defense counsel acknowledged he failed to object to paragraph 5(a) of the amended count III. The trial court denied the Association's post-trial motion, finding (1) neither Roberts nor Wells was an expert retained for the purpose of testifying and, thus, there was no requirement to disclose the intention to call them pursuant to Supreme Court Rule 220; and (2) the Association could not claim error in the filing of the amended count III of the complaint because of its failure to object to that filing at the time of the oral motion. The Association filed its notice of appeal on February 8, 1991.

Initially, Moore argues the Association has waived the issue regarding the testimony of Roberts and Wells because of the nature of the objection by the Association during their testimony. Moore contends the Association objected to the qualifications of the witnesses to testify rather than the fact that they were unable to testify because of a lack of disclosure as an expert under Supreme Court Rule 220.

■ To preserve an issue for appellate review, a party must make the appropriate objection at the trial court level or the issue will be waived. (*Akers v. Atchison, Topeka & Santa Fe R.R. Co.* (1989), 187 Ill. App. 3d 950, 543 N.E.2d 939.) When an objection is made, specific grounds must be stated and other grounds not stated are waived on appeal. *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220.

The Association first raised an objection to this testimony during the pretrial proceedings immediately prior to opening statements. The Association's attorney made an oral motion *in limine* to prevent any testimony by the witnesses as to the design of the racetrack since there was no disclosure of any experts retained to testify at trial. Moore's attorney responded that the two witnesses were not Rule 220 experts, were not retained for the purpose of testifying at trial, and both had been deposed and answered interrogatories. Therefore, their testimony was well known. The Association's attorney again objected to this testimony because he believed the witnesses were unqualified to give an opinion as to the design defect in the racetrack. The trial court noted that laypersons are allowed to testify as to matters which are within their knowledge, and the nature and extent of their experience is a matter of credibility. The trial court stated it would allow Moore to lay a foundation to determine if the witnesses were able to testify and reserved ruling on this issue until it heard the testimony of the witnesses.

After Roberts was asked whether he had an opinion as to the location of the draw gate, the Association's attorney objected. The basis of this objection was that the witness was not a design expert but was asked to give an opinion as to the design of the racetrack. The Association's attorney stated:

> "We are asking for an expert opinion as to design of a raceway much as we would be asking an expert opinion to the design of a highway where we have an accident on a curve. And we don't have—he is not an engineer, not an architect. He is an owner of a horse, and they have lack of foundation and he is not qualified to give such an opinion."

The court allowed the testimony, stating that the witness was able to give his opinion because of his experience around racetracks. The trial court noted that an engineer or a racetrack designer might have more credibility but that the witness was able to offer his opinion.

The Association's attorney also objected to Wells giving his opinion as to the location of the draw gate. He alleged that Wells had more experience around large racetracks, which would be substantially different than those at a small county fair and, thus, he was unqualified to give an opinion. Moore's attorney stated this witness had the same qualifications as Roberts except that he had more riding experience and therefore was qualified to give the opinion. The trial court allowed the witness to answer, stating the position taken by the attorneys went to the weight of the evidence.

The evidence suggests the Association made timely and proper objections. First, at the time of the motion *in limine*, Supreme Court Rule 220 was specifically mentioned. With respect to Roberts, although not specifically citing the rule, the Association's attorney essentially argued Roberts was not an expert and could not give this opinion, the inferences being (1) Roberts was not qualified as an expert in design engineering and (2) Roberts was not disclosed as an expert pursuant to Supreme Court Rule 220. With respect to Wells, it is less clear that the Rule 220 issue was not waived because the only objection was based on the foundation of his experience—for example, that he only raced at large racetracks. Nevertheless, given the discussion below and the conclusion reached, we need not decide the waiver issue.

The Association contends these two witnesses gave expert testimony as to the safety of the location of the draw gate and they were never disclosed as experts pursuant to Supreme Court Rule 220. Inasmuch, the Association alleges the trial court erred in allowing their testimony. Moore contends neither Roberts nor Wells was an expert

within the meaning of the rule since they were not retained to render an opinion on behalf of a party.

Supreme Court Rule 220(a)(1) defines an expert as "a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." (134 Ill. 2d R. 220(a)(1).) Rule 220(b)(1) provides: "In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed ***." (134 Ill. 2d R. 220(b)(1).) Supreme Court Rule 220 was designed to facilitate trial preparation and the evaluation of claims by eliminating the last-minute disclosure of experts. *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 238, 529 N.E.2d 525, 530.

This court recently addressed a similar issue in *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51. There, Smith was injured when he slipped on some ice and fell down a flight of stairs at the Newton Power Plant. Sargent and Lundy Architects (Sargent), an architectural and engineering firm, was named as a defendant. Sargent called its project manager at the Newton Power Plant to testify on its behalf. William Loftus was a licensed engineer and employee of Sargent for over 20 years. Over objection, Loftus testified that in his opinion, the gallery system (a system of catwalks and stairways which included the stairway from which Smith fell) was designed in the safest manner and complied with all professional standards. Smith argued this testimony was improper because Loftus was never disclosed as an expert witness pursuant to Rule 220.

This court disagreed with Smith and held "a party, or an employee of a party, who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1)." (*Smith*, 176 Ill. App. 3d at 495, 531 N.E.2d at 59.) This conclusion was based on three rationales derived from the supreme court's decision in *Tzystuck*. There, the supreme court held a treating physician is not an expert witness within the meaning of Rule 220. *Tzystuck*, 124 Ill. 2d at 233-35, 529 N.E.2d at 528-29.

The supreme court gave three reasons for reaching this conclusion. First, the court stated a treating physician is consulted and obtains his opinion in giving aid to the patient and not for purposes of preparing for litigation. (*Tzystuck*, 124 Ill. 2d at 234, 529 N.E.2d at 528.) Moreover, a treating physician's identity is discoverable under

Supreme Court Rule 201(b)(1) (134 Ill. 2d R. 201(b)(1)) and there is little threat of being surprised at the identity of a treating physician. *Tzystuck*, 124 Ill. 2d at 238, 529 N.E.2d at 530.

In *Tzystuck*, the court stated:

> "Treating physicians, on the other hand, typically are not 'retained to render an opinion at trial' but are consulted, whether or not litigation is pending or contemplated, to treat a patient's physical or mental problem. *** [T]he opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck*, 124 Ill. 2d at 234-35, 529 N.E.2d at 528-29.

This court found these principles to be equally applicable to the *Smith* case. First, Loftus was known to Smith as an engineer long before the trial because of his position at the power plant. Smith was not surprised that Loftus testified, but rather that he gave an expert opinion at trial. Moreover, Loftus was not retained as an expert for litigation. Loftus was intimately involved in the project as an occurrence witness long before any litigation was contemplated. Thus, this court concluded Loftus did not have to be disclosed as an expert witness pursuant to Rule 220. *Smith*, 176 Ill. App. 3d at 495, 531 N.E.2d at 59.

■ Roberts and Wells had a unique status in this case in that they were both parties and occurrence witnesses at one point in the proceedings. It was on the third day of the trial, during jury selection that, pursuant to the settlement agreement, they ceased to be parties. However, they still retained their status as occurrence witnesses. Thus, as parties, pursuant to *Smith*, or as occurrence witnesses, they would not have to be disclosed as experts. Neither was "retained" by Moore to give an opinion at trial. Both were intimately involved in the subject matter of the litigation.

Furthermore, the Association cannot claim surprise. From the initial filing of the complaint, Roberts and Wells have been involved in this lawsuit. Both Roberts and Wells were deposed by Moore's attorney, and the Association's attorney was present at both depositions. Roberts was specifically asked at his deposition in 1988:

> "Q. [By Moore's attorney:] Is that, in your experience and training in racing horses, is the location of the draw gate at the Greenup Cumberland County Fairgrounds in an unusual location for a draw gate. Right at the end of the turn?

A. It's not very safe or good; but there's, well, I think Charleston's is the same way.

Q. Where is the safer place for the draw gate to be?

A. I'd say the middle of the stretch."

Thus, the Association had notice of Roberts' opinion that the draw gate was in an unsafe location. Therefore, although Roberts and Wells were not technically parties to this lawsuit, nor were they employees of parties, they were in fact occurrence witnesses to the subject matter of the litigation. The testimony they gave was not expert testimony as to the design of the racetrack, but rather was their opinion based on their experience in training and riding horses. There was no requirement that they be disclosed pursuant to Supreme Court Rule 220. It is so fundamental as to need no citation of authority that admission of evidence is a matter largely within the discretion of the trial judge, and reversal is not warranted in the absence of abuse of that discretion. (*Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485, *aff'd* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) We find no abuse of discretion.

The Association also contends the trial court erred in allowing Moore to file amended count III, paragraph 5(a) to her complaint. By this amendment, the Association maintains a new cause of action was added to the case, to which it was unable to present any rebuttal testimony. Moore responds that the Association has waived this issue for failure to object to paragraph 5(a) of the amended count III of the complaint at the time of the oral motion.

■■ ■ Section 2—616(c) of the Code of Civil Procedure provides for the amendment of pleadings at any time so they might conform to the proofs. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c).) There is a liberal policy of allowing amendments to a complaint to conform to proof adduced at trial, but materiality of such amendments must be clear and apparent. (*Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 306 N.E.2d 554.) Additionally, it is also clear that amendments to the pleadings should not be allowed so that the other party would be prejudiced or surprised. (*Stringer Construction Co. v. Chicago Housing Authority* (1990), 206 Ill. App. 3d 250, 563 N.E.2d 819.) The test for determining whether the trial court properly exercised its discretion is whether the amendment furthers the ends of justice. (*Trident Industrial Products Corp. v. American National Bank & Trust Co.* (1986), 149 Ill. App. 3d 857, 866, 501 N.E.2d 273, 280.) The decision as to whether to allow or deny an amendment rests within the sound discretion of the trial court and such decision will not be overturned

on appeal absent an abuse of discretion. *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156.

■■ Moore is correct in her contention that the Association has waived this issue. The attorney for the Association did not object to paragraph (a) of the amended count III, and admitted as much to the trial court at the hearing on the post-trial motion. The Association's attorney did object to paragraph (d) of the amended count III of the complaint, which was deleted by the trial court. Generally, a failure to object at the original proceeding constitutes a waiver of the right to raise the issue on appeal. (*E&E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) Inasmuch as the Association has admitted it has failed to object to the filing of that paragraph of the amended count III of the complaint at trial, this issue is waived.

Moreover, even assuming the Association has not waived this issue, its argument is without merit. The proof at trial was that both Roberts and Wells believed the draw gate was in an unsafe location. As the Association contends, this issue was not specifically in the original pleadings. However, from the initial filing of the complaint, it has been an issue in the lawsuit. The Association had notice beginning in 1988 at the deposition of Roberts that the safety of the location of the draw gate was an issue in the case. Roberts was specifically asked this question at his deposition in 1988, to which he replied that the gate was not in a safe location. Furthermore, the Association had sufficient opportunity to cross-examine both Roberts and Wells on this opinion. Therefore, the Association cannot show any prejudice or surprise by the amendment to the pleadings to conform to the proofs. We find no abuse of discretion by the trial court in allowing the amendment to the complaint.

For the foregoing reasons, the trial court is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.