ROGER KNICELEY, Plaintiff-Appellant, v. JAMES J. MIGALA, Defend-
ant-Appellee.

Second District No. 2—91—1192[1]

Opinion filed November 6, 1992.—Rehearing denied December 15, 1992.

---

[1]Subsequent opinion published at 272 Ill. App. 3d 427, as a result of remand by Illinois Supreme Court for reconsideration of Rule 220 issue.

INGLIS, P.J., dissenting.

David B. Selig and Salvatore Indomenico, both of Sussman, Selig & Ross, of Chicago (Michael W. Rathsack, of counsel), for appellant.

Mark C. Meyer, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (William F. Cunningham, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Roger Kniceley, filed a medical malpractice action against defendant, James Migala, M.D. Following a jury trial, the circuit court of Du Page County entered judgment in defendant's favor, and plaintiff now appeals. The issues are as follows: (1) whether two physicians who examined plaintiff for the purpose of determining whether he was disabled for worker's compensation purposes should have been allowed to provide opinion testimony as to the cause of plaintiff's injury and the standard of care applicable to defendant when neither was disclosed within the deadlines set forth in Supreme Court Rule 220 (134 Ill. 2d R. 220); (2) whether it was error to permit defendant, a physician, to testify about the standard of care applicable to surgical technologists; (3)

whether testimony by defendant that he had never experienced a breakage problem with a certain surgical device was relevant; and (4) whether certain references by the defense to collateral source payments were prejudicial and require a new trial. We reverse and remand.

Plaintiff was a police officer for the Village of Villa Park. On July 10, 1985, he twisted his left knee while walking up a steep incline. After seeing one physician, he was referred to defendant, an orthopedic specialist.

Plaintiff first saw defendant on July 30, 1985. Defendant believed that plaintiff had suffered a torn medial meniscus. During a subsequent visit, plaintiff informed defendant that the pain had not subsided. Plaintiff agreed to undergo arthroscopic surgery, which was scheduled for September 5, 1985.

The initial arthroscopy revealed that plaintiff's medial meniscus was not damaged. Instead, he had suffered a lateral subluxating patella, which means that his kneecap was not properly aligned. Defendant performed a procedure called a retinacular release in order to realign the kneecap.

A few weeks after the surgery, plaintiff noticed that he would sometimes feel a small hard object about the size of a jelly bean toward the surface of his left knee. The object would cause a great deal of pain. Plaintiff, however, was always able to push it back inside the knee, and the pain would subside.

Plaintiff saw defendant again on October 11, 1985. Defendant felt that plaintiff may have had a loose body in his knee. A loose body is an item such as a piece of bone or cartilage that somehow breaks off. Defendant scheduled plaintiff for a second arthroscopy on October 31, 1985.

Defendant did not discover a loose body during the second arthroscopy. He did, however, remove a synovial plica from the knee. Synovial plica is a fold consisting of tissue. By early December, plaintiff was improving and only experiencing a little pain. His knee locked on January 30, 1986, and plaintiff reported this when he saw defendant the next day. Defendant believed that a loose body was present, and he scheduled plaintiff for a third arthroscopy on February 18, 1986.

During the third arthroscopy, defendant found a one-inch piece of plastic in plaintiff's left knee. He removed the object and discovered that it was the tip from a cannula, a device used in arthroscopies. After the cannula is placed inside the knee during an arthroscopy, water tubing is hooked up to the cannula so that a saline solution can be circulated through the knee during the operation. Defendant admitted

that the piece from the cannula must have broken off during one of the prior arthroscopies, most likely the first.

Plaintiff underwent physical and occupational therapy, but was unable to return to work as a police officer because of recurrent difficulties with his left knee which resulted from damage to the articular cartilage. Dr. Gerald Kane, an orthopedic surgeon who testified as an expert witness on plaintiff's behalf, stated that he believed the damage to the articular cartilage resulted from the cannula tip that was left in plaintiff's knee. Dr. Kane further testified that defendant deviated from the applicable standard of care by failing to inspect the cannula after the operation. Kane stated that all surgical instruments placed inside the patient's body should be inspected following surgery because instruments can break while inside the patient.

Frank Cassara, a certified surgical technologist, assisted defendant in all three arthroscopies. Cassara testified that he performed the duties of what is commonly referred to as a scrub nurse. He was not a registered nurse, however. Nancy Germany, a licensed registered nurse who had assisted as a scrub nurse during hundreds of arthroscopies, testified that, in her opinion, Cassara had deviated from the applicable standard of care by failing to inspect the cannula at the end of the operation. Plaintiff did not sue Cassara, but did allege in his complaint that defendant was vicariously liable for the negligence of Cassara, who was defendant's employee.

Defendant testified that, in his opinion, the applicable standard of care did not require him to inspect a plastic cannula after it was removed from a patient during an arthroscopy. He explained that a cannula is not like surgical instruments that are used to probe or cut into a patient's knee. Instead, the cannula is merely a device that is placed in the patient's knee during the operation. Defendant stated, over plaintiff's objection, that, as of the time of the initial arthroscopy performed on plaintiff, he had never heard that plastic cannulas have any tendency to break and that none had ever broken during arthroscopies in which he had used them.

Defendant further testified as follows. In his opinion, Frank Cassara did not deviate from the standard of care applicable to surgical technicians by failing to inspect the plastic cannula after the operation. Furthermore, in his opinion, the damage to plaintiff's articular cartilage resulted from the original injury rather than the presence of the cannula tip inside plaintiff's knee.

Dr. Robert Stone, an orthopedic physician, testified as follows. Plaintiff visited his office once a year between 1987 and 1989 for the purpose of having his left knee examined. Dr. Stone diagnosed plain-

tiff as suffering from complications relating to a subluxated patella. After each visit he prepared and signed a letter stating that plaintiff was unable to return to work as a result of the trouble with his knee. Dr. Stone did not know at the time of these examinations that a cannula tip had been left in plaintiff's knee for several months. He was not sure if this caused any of the damage to plaintiff's knee. He stated that the damage was consistent with the original injury that plaintiff suffered.

Dr. Satya Kaushal, an orthopedic physician who examined plaintiff's knee on April 28, 1987, testified as follows by means of an evidence deposition. In his opinion, the damage to plaintiff's left knee resulted from the original injury rather than the cannula tip that had been left in the knee. Originally, Dr. Kaushal stated that he was not sure if he had Dr. Migala's office records at the time he examined plaintiff. After having his recollection refreshed, Dr. Kaushal stated that he did have those records at the time and would have therefore been aware that the cannula tip had been in plaintiff's knee for several months.

Dr. Kaushal further testified that the applicable standard of care did not require orthopedic surgeons to inspect instruments following an operation. Instead, this function was to be performed by operating room technicians or nurses. Plaintiff objected to the proffered testimony of Dr. Kaushal and Dr. Stone on the basis that neither had been disclosed as an expert witness within the deadlines established in Supreme Court Rule 220 (134 Ill. 2d R. 220). The trial court overruled the objections and allowed them to testify.

Dr. Timothy Payne testified that he examined plaintiff and had tests performed to evaluate plaintiff's knee in July 1986. Dr. Payne believed there was permanent damage to the knee. He testified that the damage suffered by plaintiff was consistent with the original injury. He further testified, over plaintiff's objection, that the applicable standard of care did not require an orthopedic surgeon who performed an arthroscopy to inspect a plastic cannula after the surgery. Despite his trial objection, plaintiff raises no issue on appeal with respect to Dr. Payne's testimony.

The jury determined that defendant was not liable to plaintiff. Plaintiff now appeals.

Plaintiff first contends that Dr. Kaushal and Dr. Stone should not have been allowed to give opinion testimony concerning the cause of plaintiff's condition and the applicable standard of care because defendant did not disclose them as expert witnesses within the deadlines set forth in Supreme Court Rule 220(b)(1) (134 Ill. 2d R. 220

(b)(1)). Rule 220(b)(1) states in part that "an expert who is retained to render an opinion at trial" must be disclosed either within 90 days of the date on which the substance of the expert's opinion is first known to the party or the party's attorney or at the first pretrial conference, whichever is later. (134 Ill. 2d R. 220(b)(1).) The rule also states that, as to any experts not disclosed previously, the trial court shall establish a schedule of dates by which they must be disclosed and shall choose dates which will ensure that discovery of all experts will be completed at least 60 days prior to trial. 134 Ill. 2d R. 220(b)(1).

There is no dispute that if the Rule 220(b)(1) deadlines are applicable, the trial court should have barred the opinion testimony of Kaushal and Stone. There is also no dispute that Kaushal and Stone were expert witnesses as that term is defined in Supreme Court Rule 220(a)(1) (134 Ill. 2d R. 220(a)(1)). Defendant argues, however, that they were not expert witnesses whose disclosure was required under Rule 220(b)(1).

In *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35, our supreme court held that the disclosure requirements of Rule 220(b)(1) do not apply to a treating physician who is asked to give a medical opinion at trial which was developed in the course of treating a party. In so holding, the court stated, "While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any litigation." *Tzystuck*, 124 Ill. 2d at 234.

■■ *Tzystuck* does not apply here because Dr. Stone and Dr. Kaushal were examining physicians, not treating physicians. Although defendant concedes that this is the case, he argues that the Rule 220(b)(1) disclosure requirements are inapplicable under this court's opinion in *Beiermann v. Edwards* (1990), 193 Ill. App. 3d 968. The trial judge relied on *Beiermann* in ruling that defendant could present opinion testimony from Stone and Kaushal.

The plaintiff in *Beiermann* filed an action to recover for injuries suffered in an automobile accident with the defendant. At the time of the accident, the plaintiff was engaged in his duties as an employee of the State of Illinois, which filed a complaint for intervention. The State had the plaintiff see a physician for the purpose of evaluating the worker's compensation claim and recommending treatment and therapy. The trial court allowed the defendant to present opinion testimony from that physician despite the fact that he had not been disclosed as an expert witness. *Beiermann*, 193 Ill. App. 3d at 971-74.

This court affirmed, stating that the physician's relationship with the plaintiff "was more in the nature of a treating physician than a

physician hired to give an opinion at trial." (193 Ill. App. 3d at 978.) We pointed out that the physician was hired "to evaluate Beiermann's problem *and to recommend possible treatment.*" (Emphasis added.) (193 Ill. App. 3d at 978.) Here, Dr. Stone and Dr. Kaushal were not consulted for the purpose of treating plaintiff or recommending treatment. The sole purpose for their examinations was to certify plaintiff's continuing inability to work so he could continue to receive worker's compensation payments. Therefore, unlike *Beiermann,* the doctors whose testimony is at issue here cannot be considered treating physicians.

One of the primary purposes of Rule 220 is to assure that the parties and their attorneys are "adequately advised regarding the critical opinions which may be offered in support of their opponent's claims or defenses." (Ill. Ann. Stat., ch. 110A, par. 220, Committee Comments, at 438 (Smith-Hurd 1985), quoted in *Oldenburg v. Hagemann* (1991), 207 Ill. App. 3d 315, 326.) The rule is designed to prevent surprise opinion testimony. (*Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 40.) In order to comply with the rule, a party must reveal the identity of the witness and specifically reveal an intention to call that witness as an expert. (*Illinois State Toll Highway Authority v. West Suburban Bank* (1991), 208 Ill. App. 3d 923, 926.) In the case at bar, plaintiff was undoubtedly aware of the existence of Dr. Stone and Dr. Kaushal prior to trial. Their depositions made plaintiff aware of the substance of their opinions. Plaintiff was not advised within the deadlines set forth in the rule, however, that those opinions would be used as evidence against him. The rule was intended to prevent this type of surprise employment of expert testimony.

We are aware that in a number of cases courts have extended the *Tzystuck* rationale to experts who were not treating physicians. (See, e.g., *Moore v. Roberts* (1991), 217 Ill. App. 3d 446, 453-54 (horse owner and jockey); *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 836 (truck driver); *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 494-95 (engineer).) These cases, in our view, have unnecessarily eroded Rule 220's general rule requiring disclosure of the identity of experts, the intention to call them as witnesses, and the substance of their opinions within the established deadlines. (See *Wakeford,* 223 Ill. App. 3d at 39-40.) We therefore decline to rely on these cases to further extend *Tzystuck* to examining physicians.

Defendant contends that applying Rule 220 to examining physicians would place defense counsel in an untenable position. This is because the attorney is forbidden from having contact with the plain-

tiff's examining physicians outside the normal channels of discovery in order to preserve the physician-patient privilege. (*Karsten v. McCray* (1987), 157 Ill. App. 3d 1, 13-14.) According to defendant, this would make it difficult for defense attorneys calling examining physicians as experts to comply with Rule 220(c), which requires parties to disclose the opinions of their disclosed expert and the basis of those opinions upon an interrogatory propounded for that purpose. (134 Ill. 2d R. 220(c)(2).) The answers to these interrogatories must be supplemented as further information becomes available to the party or the party's counsel. 134 Ill. 2d R. 220(c)(3).

In our view, the above problem is not insurmountable and does not require recognition of an exception to the disclosure requirements of the rule. If the defendant initiates discovery early, he or she can discover the identities of any examining physicians. Taking their depositions promptly will enable the defendant to discover the substance of any expert opinions in time to permit compliance with the disclosure requirements of Rule 220 if the defendant decides to use the expert testimony of an examining physician at trial.

For these reasons, we conclude that the disclosure requirements of Rule 220(b)(1) apply when a party seeks to employ the expert testimony of an examining physician. Because defendant did not comply with these requirements, plaintiff's motion to bar the expert testimony of Stone and Kaushal should have been granted. (See *Oldenburg v. Hagemann* (1991), 207 Ill. App. 3d 315, 327; *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 223-24.) Defendant argues that, even if the trial court committed error in this respect, plaintiff has failed to establish any prejudice and is therefore not entitled to a new trial. We disagree.

An erroneous evidentiary ruling at trial will not result in reversal and a new trial unless it could have affected the outcome of the trial. (*Leary v. Eng* (1991), 214 Ill. App. 3d 279, 284; *Green v. Cook County Hospital* (1987), 156 Ill. App. 3d 826, 829-30.) In the case at bar, expert testimony was crucial to the jury's determination of the two major issues in the case, whether the failure of defendant or Cassara to inspect the plastic cannula was a deviation from the standard of care and whether the permanent damage to plaintiff's knee was caused by the original injury or by the presence of the cannula tip. Accordingly, the erroneous admission of expert testimony relating to these issues cannot be considered harmless. We therefore reject this contention and conclude that plaintiff is entitled to a new trial.

We will consider the other issues raised by plaintiff because they may recur at the new trial. Plaintiff contends that it was error to per-

mit defendant, a physician, to testify as to the applicable standard of care for scrub nurses. Plaintiff argues that, under our supreme court's decision in *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, the only permissible expert testimony on the above matter would have been testimony from a nurse.

In *Dolan*, the court held that an orthopedic surgeon could not be permitted to testify as to the standard of care applicable to a podiatrist. (*Dolan*, 77 Ill. 2d at 285.) The court noted that the legislature had provided distinct licensing and regulatory requirements for various schools of medicine. (77 Ill. 2d at 284.) The court further stated as follows:

> "We simply are not disposed to provide for what, in effect, may result in a higher standard of care when the legislature, by recognizing various schools of medicine, has not done so. To do so would not only be unfair to podiatrists (*i.e.*, to allow practitioners of other schools to testify regarding the standard of care podiatrists owe), but it would also assume that science and medicine have achieved a universal standard of treatment of disease or injury. Such is not the case." 77 Ill. 2d at 284.

■ The court therefore reached the conclusion in *Dolan* that "in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein." (77 Ill. 2d at 285.) Plaintiff's argument that, under *Dolan*, only a licensed nurse could testify about the standard of care applicable to Cassara is without merit because Cassara himself was not a licensed nurse; he was a certified surgical technician. Although he was referred to as a scrub nurse, it is clear from the evidence that this term referred generally to operating room assistants, some of whom were not nurses.

According to the trial testimony, Illinois has no licensing requirements for surgical technicians. Therefore, the *Dolan* rule cannot be applied here and the general rules relating to the admissibility of expert testimony are applicable. The general rule is that the trial judge has broad discretion in determining whether a witness is qualified to testify as an expert about a particular matter. (*Valiulis v. Scheffels* (1989), 191 Ill. App. 3d 775, 785.) In order to lay a proper foundation for such testimony, a party must show that the expert has specialized knowledge or experience in the area in which the expert expresses his or her opinion. *Valiulis*, 191 Ill. App. 3d at 785.

Here, the defendant was an experienced orthopedic surgeon. The trial court could reasonably have concluded that he was familiar with the standard of care applicable to an individual who assisted him during surgery and who was under his direction. The trial court did not

err by allowing defendant to testify about the standard of care applicable to Cassara.

Plaintiff next argues that it was error to permit defendant to testify that, prior to the initial arthroscopy performed on plaintiff, defendant had never had a plastic cannula break during an operation and had never heard of one breaking. Plaintiff argues that such evidence was irrelevant because defendant's own experiences and knowledge had nothing to do with the relevant standard of care.

■ Evidence should be admitted only if it is material. (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 952.) Evidence is relevant or material if it tends to prove a fact in controversy or makes a contested matter more or less probable. (*Wimberley v. Material Service Corp.* (1973), 12 Ill. App. 3d 1051, 1056.) In our view, the testimony in question was relevant as it tended to support defendant's testimony that the applicable standard of care did not require the inspection of plastic cannulas after surgery. Dr. Kane, plaintiff's expert, testified that the standard of care required the surgeon's inspection of all instruments following surgery because pieces of instruments can break off when they are inside the patient. Defendant explained that a cannula is not used for cutting or as a probe like certain instruments. Instead, it is a device that stays in one place during an arthroscopy, thereby diminishing the chances of breakage. He also made the statements that are at issue here regarding his lack of awareness of any breakage problem with plastic cannulas.

In our view, defendant's testimony was relevant because it tended to rebut Dr. Kane's foundational testimony for his conclusion as to the applicable standard of care. Dr. Kane based his conclusion in this regard upon the fact that instruments could break while inside the patient. Defendant's testimony, taken as a whole, tended to show that the standard attested to by Dr. Kane for inspection of instruments in general was not applicable to this particular device because there was no reason to believe it might break. We therefore conclude it was relevant and material.

The final argument raised by plaintiff is that he was prejudiced by certain references during trial to collateral source payments. At one point, defense counsel briefly displayed a document to the jurors that mentioned worker's compensation. The trial judge asked each juror what he or she remembered about the contents of the document. None of the jurors mentioned anything about worker's compensation. Additionally, defendant mentioned that a certain bill he was questioned about was an insurance statement.

 It is not disputed that these references to collateral source payments were improper. (See *Foster v. Lanciault* (1979), 70 Ill. App. 3d 962, 966.) The only dispute is whether they entitle plaintiff to a new trial. In light of our prior holding that plaintiff must receive a new trial, we need not resolve this issue. The improper references should be avoided at the new trial.

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

DOYLE, J., concurs.

PRESIDING JUSTICE INGLIS, dissenting:

I disagree with the majority's conclusion that the trial court erred by allowing the opinion testimony of Drs. Kaushol and Stone and therefore respectfully dissent.

The majority opinion is an overly technical approach to Supreme Court Rule 220 (134 Ill. 2d R. 220) and focuses on form over substance. The record shows that plaintiff knew the identity of the two doctors, the opinions they held regarding plaintiff's injuries, and that defendant was likely to call them to testify at trial. However, defendant did not inform plaintiff that he intended to call either or both doctors to testify. The real question is whether a litigant must inform opposing counsel which experts, of those that have been identified and fully deposed, he intends to call to testify at trial.

In this case, plaintiff's counsel supplied the names of the two doctors to defendant in answer to pretrial interrogatories. Plaintiff knew their qualifications and opinions regarding plaintiff's injuries since both were deposed by defendant. In fact, defendant took an evidence deposition of Dr. Kaushol which should have alerted plaintiff to the possibility that defendant would use Dr. Kaushol's testimony at trial. Lastly, plaintiff vigorously argued a motion *in limine* on the first day of trial to bar all opinion testimony of the two doctors, which is an indication that plaintiff had anticipated that their testimony would be offered by defendant.

In its most basic form, Rule 220 requires each party to inform the other of the identities of testifying experts and allow for the discovery of their opinions regarding the case. (134 Ill. 2d R. 220.) All that plaintiff was missing was a sheet of paper from defendant 60 days before trial stating that pursuant to Rule 220 he was going to call the two doctors to testify at trial. I do not believe a reversal is an appro-

priate sanction in this case, since plaintiff has failed to show prejudice or surprise. See *Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 8 ("purpose of a sanction for a violation of Rule 220 is not to punish but to insure fair discovery and a trial on the merits").

Since the majority reversed on this issue alone, I limit my dissent to it notwithstanding the other issues raised.